UNITED STATES, Appellant

v

JAMES R. TAYLOR, Specialist Four, U. S. Army, and
TRACY L. BARNES, Private First Class,
U. S. Army, Appellees

12 USCMA 44, 30 CMR 44

No. 14,186

No. 14,289

Decided December 2, 1960

*First Lieutenant Barry L. Kroll* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel James G. Mc-Conaughy.*

*First Lieutenant Richard A. Baenen* argued the cause for Appellees, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod. First Lieutenant Ralph T. Smith* was also on the brief for Appellee, Tracy L. Barnes, in No. 14,289.

Opinion of the Court

GEORGE W. LATIMER, Judge:

These are companion cases that have been consolidated for decision. The accused were apprehended for jointly looting certain property from parked aircraft at Fort Campbell, Kentucky,

but each was separately tried by general court-martial. But men were represented by individual civilian defense counsel and each pleaded guilty as charged to larceny from and housebreaking of C–123 military aircraft, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930, respectively. Identical sentences to bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the lowest enlisted grade were adjudged. The convening authority, in each instance, approved the findings and sentence. However, when the two cases came on before different boards of review in the office of The Judge Advocate General of the Army, both boards, relying on our decision in United States v Gillin, 8 USCMA 669, 25 CMR 173, concluded that an aircraft was not a "building or structure" within the meaning of Article 130 of the Code, supra, and could not be the subject of that offense. Accordingly, the boards set aside and dismissed the house-breaking convictions as to the accused, and reassessed the sentence of each. The affirmed sentence as to accused Barnes was reduction to the lowest enlisted grade, and partial forfeitures and confinement for six months. Taylor's sentence was reduced to confinement and partial forfeitures for that same period.

Thereafter, in each case the following question was certified to this Court under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867:

"Was the board of review correct in holding that the unlawful entry into a C–123 military aircraft with the intent to commit a larceny therein is not an offense under the Uniform Code of Military Justice, Article 130, or otherwise?"

Parenthetically, we note that in both cases The Judge Advocate General of the Army has, apparently to insure the accused against substantial harm by reason of the certifications, remitted so much of the adjudged sentences as exceeds partial forfeitures and confinement for six months, and reduction to the lowest enlisted grade.

Article 130, Uniform Code of Military Justice, supra, provides that:

"Any person subject to this chapter who unlawfully enters the building or structure of another with intent to commit a criminal offense therein is guilty of housebreaking and shall be punished as a court-martial may direct."

As was noted during the Hearings before the House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, at page 1234, the present Article represents an enlargement in the scope of the offense of housebreaking in that the words "or structure of another" were included. Congress did not, however, specify in Article 130 the exact property considered to be such "structures."

Although it is clear that a C–123 aircraft is not a building, appellate Government counsel urge upon us the argument that it is a structure within the contemplation of the above-quoted Article. In that connection they invite our attention to Black's Law Dictionary, 4th ed, at page 1592, where "structure" is defined as:

"Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner."

and the provisions of paragraph 209, Manual for Courts-Martial, United States, 1951. There, in the discussion of housebreaking, the following statement appears:

"The word 'building' includes a room, shop, store, office, or apartment in a building. As used in this article, the word 'structure' refers only to those structures which are in the nature of a building or dwelling. Examples of such structures are a stateroom, hold or other compartment of a vessel, an inhabitable trailer, an inclosed goods truck or freight car, a tent, and a houseboat."

The defense, on the other hand, contends that the decision in United

**45**

States v Gillin, supra, is dispositive, and argues that the decisions of the boards of review should be affirmed.

It is clear that the offenses of housebreaking and unlawful entry are closely related and may, under █ certain circumstances, █ stand in the position of greater and lesser. United States v Love, 4 USCMA 260, 15 CMR 260. And, although this Court has never specifically delineated the scope of the crimes one to the other, it is beyond cavil that property not protected against unlawful entry may not properly be the subject of housebreaking. Accordingly, in resolving the certified issue presently before us, we may profitably look to prior cases where we have considered the scope of the offense of unlawful entry.

In United States v Love, supra, a unanimous Court held that a tent may be the subject of that crime. That conclusion was easily reached, but later, in the *Gillin* case, we were confronted with a more difficult question of statutory construction, and we held that an automobile may not be considered such property as is protected against unlawful entry. Necessarily we rejected any contention that the scope of that offense is so broad as the definition from Black's Law Dictionary quoted hereinabove, and indeed, as the Government concedes, we note that not even the discussion in paragraph 209 of the Manual, supra, sweeps in so large an area. To the contrary, after adverting to certain material deemed helpful in seeking out the intent of the lawmakers, the author Judge concluded in United States v Gillin, supra:

". . . that Congress and those individuals interpreting the Code . . . [made] a calculated and intentional determination to limit the property protected by the law governing unlawful entry to real property or to such form of personal property as is usually used for storage or habitation." [8 USCMA at page 672.]

The C–123 aircraft is, as the Government points out, a large troop or cargo-carrying military transport. On the one hand, it is analogous to a railroad car, which it would seem Congress specifically intended to protect. See Title 22, District of Columbia Code, § 22–1801 (1951 ed); cf. paragraph 209, Manual for Courts-Martial, supra. On the other hand, it is urged that the plane is more nearly akin to the automobile considered by us in *Gillin*, and that it is not usually used for storage or habitation. While both arguments have merit, we subscribe to the latter contention.

True it is that the C–123 or other large aircraft may be used as a freight or passenger carrier, and █ to that extent it is similar to a railroad car. The latter, however, is commonly used for storage to obviate unloading and reloading, or for want of warehouse space. Likewise railroad cars are often used as living quarters for work crews maintaining the roadbed and in other instances. To the contrary, it would seem that by its very nature the plane, like the automobile, is ordinarily used simply as a conveyance, and it would be quite unusual that it be utilized for storage or habitation. Certainly we do not believe that the presence of parachutes, seat belts, or litters within aircraft, as was the case in the situation here before us, indicates storage any more than a spare tire would be considered "stored" in the trunk of any auto. To the contrary, the mentioned items—which, incidentally, were the property stolen by the accused—appear to be merely ordinary equipment or fixtures of the vehicle itself. Nor is the plane usually adapted to shelter or habitation any more than the motor car. Consequently, we believe they fall into the same category.

A further argument is made, however, that Congress has indicated its intent to treat aircraft and railway cars as members of the same class. In that connection our attention is invited to "a federal housebreaking-type statute," section 2117 of Title 18, United States Code, which expressly provides for the punishment of:

"Whoever breaks the seal or lock of any railroad car, vessel, aircraft, motortruck, wagon or other vehicle, containing interstate or foreign shipments of freight or express, or enters any such vehicle with intent in either case to commit larceny therein, . . ."

The short answer to this argument is that, by its very terms, this statute is directed solely to a specialized protection of vehicles which are in fact loaded with goods in interstate or foreign commerce. If a plane were so loaded, that section might properly provide the foundation for charging a crime or offense not capital under the third category in Article 134, Uniform Code of Military Justice, 10 USC § 934, but its specifically limited terms afford a poor basis for broad extension of the offenses of housebreaking and unlawful entry. Moreover, it is of interest to note that, while Congress included aircraft within the enumeration of protected property in 18 USC § 2117, supra, it also included motor vehicles, and we have rejected that coverage insofar as passenger cars are concerned. Finally, Congress did not see fit to include aircraft in the District of Columbia housebreaking statute, even though other vehicles are there listed. Title 22, District of Columbia Code, § 22–1801, supra.

For the above-stated reasons, we believe our decision in United States v Gillin, supra, is controlling, and we therefore conclude an aircraft is not such property as was intended to be cloaked with protection against unlawful entry under Article 134 of the Code, supra, nor, therefore, is it properly the subject of the offense of housebreaking under Article 130 of the Code. We appreciate the reprehensible nature of the conduct of these two accused, but, as was pointed out in *Gillin*, that does not leave the military remediless to curtail it by criminal sanction. In the event of theft, larceny may be charged, as was done in these cases. Also, if there is damage, violations of Articles 108 or 109, Uniform Code of Military Justice, 10 USC §§ 908 and 909, might properly lie. Furthermore, when the aircraft contains interstate shipments of freight or express, prosecution might be possible under the general Article if there is a breaking or entry. If these remedies are inadequate to prosecute offenders who break or enter aircraft, then the cure must be by Congressional enactment.

The certified question is answered in the affirmative, and the decisions of the boards of review are affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I cannot accept the comparison advanced in the principal opinion. In my opinion, the aircraft in these cases, which is concededly designed and used for the transportation of large quantities of freight and personnel, is logically more closely analogous to a vessel or an "inclosed goods truck or freight car," than it is to a passenger automobile. See Manual for Courts-Martial, United States, 1951, paragraph 209. A large cargo plane is truly a vessel or freight car of the sky. If the latter two are structures within the meaning of the housebreaking statute, the type of plane entered in this case is also such a structure. I would answer the certified question in the negative.