UNITED STATES, Appellee,

v.

Melvin WRIGHT, Private First Class,
United States Army, Appellant.

No. 33,614.

CM 434128.

U. S. Court of Military Appeals.

May 15, 1978.

Captain John Richards Lee argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel John R. Thornock, Captain Ralph E. Sharpe, and Captain Demmon F. Canner.

Captain Glen D. Lause argued the cause for Appellee, United States. With him on the brief were Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major John T. Sherwood, Jr., Major Steven M. Werner, and Captain Gay M. Holmes.

Opinion of the Court

COOK, Judge:

We hold that the judge abused his discretion in denying a defense motion to withdraw an accepted request for trial by judge alone. We also hold that military law does not preclude prosecution of burglary of an automobile, as conduct proscribed by Texas Penal Code § 30.04 (1974), and made cognizable as an offense within the Federal Assimilative Crimes Act, 18 U.S.C. § 13, that was triable by court-martial as a violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.

I

The Motion to Withdraw the Request for Trial by Judge Alone

■ The accused and Private Edwards were separately charged with offenses arising out of forcible entry into automobiles parked within the boundaries of Fort Hood, Texas. The charges were directed to be tried in common by a general court-martial. Each accused had a different lawyer.

On September 8, 1975, the cases came on for hearing. In a preliminary Article 39(a) proceeding, Captain Preston, the accused's counsel, unsuccessfully challenged the judge for cause. Nevertheless, the accused and Edwards submitted a request for trial by judge alone. See Article 16(1)(B), UCMJ, 10 U.S.C. § 816(1)(B). The request was accepted, and proceedings continued through arraignment and defense motions, all unsuccessful, for various forms of relief, including a severance of trial on the ground the accused would probably present inconsistent defenses. During these proceedings, both defense counsel attempted three times to get the judge to consider a motion to suppress pretrial statements by the accused in which each referred to actions by the other. Twice the matter was put aside in favor of another motion. On the third occasion, consistent with his "policy," the trial judge declared that he would consider the admissibility of the statements at such time as they were offered into evidence by the Government. In so doing, the trial judge disregarded argument by counsel that their clients could not "intelligently" decide on a plea, until determination of defense objections to the admissibility of the statements. However, counsel succeeded in obtaining deferral of the entry of a plea until Friday, September 12, which had been "reserved" for evidence on the merits. But, court reconvened the next morning, September 9.

Reconvening of the proceedings had been advanced to allow a motion to withdraw the requests for trial by judge alone. The reasons each accused gave were "basically" the same. Reordered, and restated to include facts previously before the court and inferences suggested by the defense arguments, they were as follows:

1. Adverse effects of the failure to achieve agreement on a plea of guilty with the convening authority.

At the initial Article 39(a) session, the accused had requested a bench trial, not-

withstanding he had just challenged the trial judge for cause. While not specifically articulated in the defense argument, it appears this unusual course was followed because the defense had anticipated concluding, before entering a plea at trial, an agreement with the convening authority providing for a plea of guilty. Between the first and the reconvened sessions, the endeavor had failed. Defense counsel perceived two adverse consequences from the failure that had not been foreseen at the time of the presentation of the request for trial by judge alone. These were:

a. The challenge of the judge for cause.

Captain Preston "reiterate[d]" the earlier challenge of the judge for cause. Although he did not verbalize the ground, it reasonably appears he feared that an unrevoked request for a bench trial could be viewed as an abandonment of the challenge, and thereby deprive his client of appellate review of the denial of the challenge.

b. Determination of the voluntariness of the pretrial statement by each accused.

It will be recalled that defense counsel had three times tried to interpose a motion to suppress, but the judge had avoided the issue and finally deferred inquiry until such time as the Government offered the statements into evidence. Counsel noted that the unanticipated failure to obtain an agreement with the convening authority altered the defense position. Where agreement on a plea of guilty would have rendered the motion to suppress moot, the failure to obtain one, coupled with the trial judge's refusal to take up the motion before entry of a plea, meant that the accused had to enter a plea of not guilty to preserve the "substantial issue" of the voluntariness of the pretrial statements. As Edwards' lawyer indicated, "going with a panel" would leave the legal question of admissibility to the judge, but allow the court members to determine the factual voluntariness of the statements, whereas proceeding with the judge would leave both issues to be resolved by one person alone; he implied it was in the accused's interest to separate the responsibility.

2. The Absence of Disadvantage to the Government.

Without challenge or refutation by government counsel, the defense counsel represented that the court members were "readily available" for trial on Friday, September 12. They had been called for another case on that day, but the case was "not . . . going to trial." Although not particularized, it was also apparent that the government's witnesses would not be adversely affected as the day of trial remain unchanged. Counsel further pointed out that the proceedings had not gone beyond arraignment, and to grant the motion would not require revocation or reconsideration of any action already taken or any ruling, other than the vacation of acceptance of the request for a bench trial.

The trial judge denied the motion without comment on any of the grounds for relief advanced by defense counsel. However, he made two remarks. First, he said he had had no previous knowledge of any attempt to negotiate a pretrial agreement as to the plea; and secondly, he noted he had "determined in open court . . . [that the request for a bench trial had] been made with full understanding of its meaning and effect and which . . . [he] approved at that time." Thereafter, the trial proceeded to conviction and sentence.

Two opinions by this Court, released on the same day, provide the legal framework for our consideration of the correctness of the judge's ruling. *United States v. Morris,* 23 U.S.C.M.A. 319, 49 C.M.R. 653 (1975), and *United States v. Bryant,* 23 U.S.C.M.A. 326, 49 C.M.R. 660 (1975). In *Morris,* the Court held that the statutorily prescribed time within which a request for a bench trial may be submitted, specifically "before the court is assembled" (Article 16(1)(B), *supra*), is not a jurisdictional requirement for such a trial; and in determining whether to accept a request, the trial judge must "balance the interests of the accused and the Government." 23 U.S.C.M.A. at 324, 49

C.M.R. at 658. In *Bryant*, the Court determined that an application by the accused to withdraw a request is proper, and, while the judge has discretion to allow or deny it, his ruling against the accused is subject to review for "abuse." *Id.* at 328, 49 C.M.R. at 662.

Appellate government counsel contend that adherence to *Bryant* "compels" the conclusion that the judge in this case acted well within the limits of his discretion. As the moving party, the accused has to demonstrate not just that the "balance" of interests favors nullification of his request for trial by judge alone, but that the balance so strongly favors it that a refusal to nullify appears as an arbitrary or capricious act. In *Bryant*, the accused failed even to adumbrate any ground for relief, other than the engagement of additional counsel; at the same time, the accused sought to retain "the right" to request again trial by judge alone, which was a powerful indication that if the application to withdraw was granted, he could be expected to ask later for revocation of the revocation. In contrast, the accused here presented specific interests that would be better served in a trial before court members than in one before the judge alone; he also alleged circumstances, not disputed by government counsel, to indicate that the Government would not be disadvantaged by the change. Patently, therefore, the facts in *Bryant* in support of the application for withdrawal are dissimilar to those in this case.

The matters presented by the defense made out a powerful case for a trial with court members, not one by judge alone. The problems presented by the pretrial statements are particularly notable. If the trial continued before the judge alone, he would be confronted with successive considerations of the contents of the statements, in which the nature of the first would establish the impropriety of his involvement in the second. As judge, he would have to consider the statements to determine their admissibility. Each statement contained references to the co-accused, which necessitated excisions to assure that the judge, as factfinder, would not be aware of those references. Such excision could not be accomplished without reading the statements. The judge's alternatives were to deny admissibility or to direct a severance. *United States v. Green*, 3 M.J. 320 (C.M.A.1977). Neither of these had the advantages of continuing the trial with court members; that course would have preserved both the proceedings already had and the Government's right to use important evidence. Considering all the circumstances, to grant the motion would plainly have been not only in the interests of the accused, but would materially have advanced the interests of the Government. At the same time, the facts demonstrate that no disadvantage would have inured to any court member or government witness.

Left for consideration are the two remarks by the judge at the time of his ruling. The first was his disclaimer of prior knowledge of the effort to obtain a pretrial agreement on a plea of guilty. That would weigh against the application only if it amounted to a finding that the defense had intentionally withheld earlier disclosure because it had perceived some advantage from such action; and it contemplated later rejection of the action, if the advantage was not realized. Manipulation of trial proceedings for such a purpose could justify denial of the motion. *United States v. Wolfe*, 8 U.S.C.M.A. 247, 24 C.M.R. 57 (1957); *see also Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). However, in our opinion, the judge's remark was not intended to be a finding of manipulation. It appears to be only the disavowal of prior knowledge of a matter that could be viewed as an improper influence upon him in his later deliberations on the accused's guilt. The remark itself suggests that the judge did not disbelieve the representation, inherent in defense counsel's argument on the motion, that failure of the negotiation for a plea of guilty had not been expected, and it precipitated a material and disadvantageous change in the defense position from that anticipated in good faith when the bench trial was requested.

■ In position and content, the second comment by the judge appears to be the actual ground on which he predicated his denial of the motion. He said he had determined that the defense request for a bench trial had been made "with full understanding of its meaning and effect." That is a circumstance that can properly be taken into account, *United States v. Bryant, supra,* but its weight depends largely upon whether the application is based essentially upon a change of mind about a bench trial or a change of conditions. The defense here did not claim lack of knowledge or misunderstanding of the consequences of a bench trial, or a change of mind. It contended that, unexpectedly and without fault on its part, anticipated conditions that made a bench trial desirable had failed to materialize, with the result that the judge, proceeding as both judge and factfinder, could not effectively deal with various issues in the case without substantial risk of prejudicial error. Manifestly, the stated finding by the judge that the accused had requested a bench trial "with full understanding of its meaning and effect," did not override the factors that rendered that kind of trial inappropriate. On this record, we are constrained to conclude that the trial judge abused his discretion in denying the motion to vacate his acceptance of the request for a bench trial and to continue the proceedings with court members.[1]

## II

### The Preemption Issue

Six of the acts of misconduct of which the accused stands convicted are alleged as violations of that part of Article 134, UCMJ, which makes cognizable as military offenses "crimes and offenses not capital" defined in federal civilian law. *See United States v. Rowe,* 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962). The aggregate period of confinement for these offenses amounted to almost 80% of the total confinement to which the accused was subject. Appellate

defense counsel contend that the entire field of misconduct embraced by the charge has been preempted by military law, and, therefore, the Government is precluded from prosecuting the offense defined by civilian law.

The concept that evolved as the doctrine of preemption was first discussed by this Court in the early case of *United States v. Norris,* 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953). There, the accused was charged with larceny, in violation of Article 121, UCMJ, 10 U.S.C. § 921. That article proscribes two kinds of unauthorized takings of property of another; the first is the taking with the intent to permanently deprive the person of the property, which is larceny, and the other is unauthorized taking with an intent to temporarily deprive, which is denominated wrongful appropriation. The court-martial convicted the accused of wrongful appropriation, but on appeal the finding was changed by the Board of Review (now Court of Military Review) to "wrongful taking," in violation of Article 134 of the Code. *Id.* at 238, 8 C.M.R. at 38. The Judge Advocate General of the Army certified the case to this Court to determine whether the finding by the appellate tribunal constituted an offense under military law. Reviewing military legal precedents and the legislative background of the Uniform Code, the Court concluded that in Article 121, Congress "covered the entire field of criminal conversion for military law" and the Government could not "eliminate vital elements" from the offenses specified in that article and charge the remaining elements as an offense in violation of Article 134. *Id.* at 239, 8 C.M.R. at 39.

■ *Norris* stressed, as have later opinions on the subject, that the applicability of the preemption doctrine requires an affirmative answer to two questions. The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the

---

1. Our conclusion as to this issue makes it unnecessary to consider other assignments of error relating to the trial judge.

Code; the secondary question is whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of either Articles 133 or 134, which, because of their sweep, are commonly described as the general articles. *See United States v. Bonavita,* 21 U.S.C.M.A. 407, 45 C.M.R. 181 (1972); *United States v. Herndon,* 15 U.S.C.M.A. 510, 36 C.M.R. 8 (1965). The offense in issue does not raise either question.

◾ Two articles of the Uniform Code, 129 and 130, prohibit unauthorized entry into specified places and structures. An automobile is not within the protected structures. *United States v. Gillin,* 8 U.S.C.M.A. 669, 25 C.M.R. 173 (1958); *see also United States v. Taylor,* 12 U.S.C.M.A. 44, 30 C.M.R. 44 (1960). Consequently, we are not, as the Court noted in *Herndon, supra* at 513, dealing with "the dropping of an element of a specifically denounced offense," but with whether the act charged is independently an offense in violation of the Code. *See also United States v. Barnes,* 14 U.S.C.M.A. 567, 34 C.M.R. 347 (1964). In *United States v. Taylor, supra* at 45, 47, the Court held that a large cargo-carrying aircraft was not a "structure" protected by Article 130, and therefore, an unlawful entry therein could not be prosecuted as a violation of the article. The court went on to consider charges that could legally have been lodged against the accused. It observed that he could properly have been charged with a violation of Title 18, § 2117, of the federal civilian penal code under the crimes-and-offenses-not-capital provision of general article 134. Concededly, the observation in *Taylor* was dictum, but the concept is soundly based, especially as it relates to the Assimilative Crimes Act.

◾ Appellate defense counsel acknowledge that the Assimilative Crimes Act was intended by Congress "to fill the voids in the criminal law applicable to federal enclaves." *See United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). As Chief Judge Quinn of this Court remarked, in a separate opinion, the Act expresses "the desire of Congress to pre-vent Federal areas within a particular State from becoming privileged sanctuaries of immunity for persons engaging in conduct that is criminal in all other parts of the State." *United States v. Borys,* 18 U.S.C.M.A. 547, 554, 40 C.M.R. 259, 266 (1969). No express provision of the Uniform Code makes criminal the act in issue. A "void" exists, therefore, in the military law. As the accused's actions took place within the boundaries of Fort Hood, Congress intended to fill that void by reference to federal civilian crimes, including those encompassed within the Assimilative Crimes Act. *United States v. Rowe, supra.* As determinable from its legislation and this Court's application of that legislation, Congress did not manifest an intention, as regards prosecution for unlawful entry with a criminal purpose, to limit the military to those structures and places enumerated in Articles 129 and 130 to the exclusion of other places and structures covered by civilian statutes included within the crimes and noncapital provision of Article 134. Accordingly, we conclude that the doctrine of preemption is inapplicable, and the accused was properly charged with the offenses in issue.

For the reasons indicated in Part I of this opinion, the decision of the United States Army Court of Military Review is reversed and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

PERRY, Judge (concurring):

I agree with Judge Cook's opinion, with the exception of footnote 1 thereto in which Judge Cook indicates that the Court's disposition of the case on the basis of the judge's error discussed "makes it unnecessary to consider other assignments of error relating to the trial judge."

We granted review of two other allegations of judge-related error: one contending that he erred in denying a motion for separate trials of the appellant and his co-defendant; the other contending that the judge erroneously denied a defense challenge against him for cause. While I agree

that consideration of the former is mooted by our action, I do not agree as to the latter, which urges more than mere judge error; rather it asserts that the trial judge was *disqualified* from acting in that capacity at the appellant's trial. To conclude otherwise is to imply that, had the trial judge not made the error discussed in the majority opinion, he could have proceeded to try the case, which is the very matter at issue in one of the two questions left unaddressed in the majority opinion. Therefore, I feel compelled to comment on that one matter.

At the point in the preliminary portion of the trial at which the trial counsel asked the trial judge whether the judge believed there were any grounds for challenge against him as judge, the latter replied in the negative. However, he proceeded to state for the record:

> [O]n the date of the alleged offenses I was the Staff Judge Advocate for the Second Armored Division [the general court-martial jurisdiction in which the appellant's case was being tried] and was the Staff Judge Advocate until the eighth of July 1975. During that period of time I had no knowledge of the incidents involved in the charges against these accused. I was not aware of the incidents or the charges until approximately ten days ago when the case was set for trial.

The record reveals that while the trial judge was the staff judge advocate for this jurisdiction, not only did the alleged offenses occur, but also the instant charges were preferred against the appellant and the appellant was ordered into pretrial confinement. Under these circumstances, I am of the opinion that sound judicial discretion required the trial judge to have recused himself in this case, which had begun percolating up through the military justice system in his command at the time he was the staff judge advocate therefor.

28 U.S.C. § 455(a) admonishes:[1]

> Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Similar language is found in Canon 3C(1) of the American Bar Association's Code of Judicial Conduct:

> A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned.

And, again in similar language, Standard 1.7 of the American Bar Association's Standards Relating to the Function of the Trial Judge warns:

> The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or *whenever he believes his impartiality can reasonably be questioned.* (emphasis added)

Commenting on this standard, the drafters thereof opined:

> Beyond compliance with local statutes, the trial judge has an obligation to recuse himself whenever necessary to protect the right of the accused and of the public to an impartial trial. Canon 3C(1), Code of Judicial Conduct (Final Draft, May 1972). The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be actual presence of bias or prejudice. Orfield, *Recusation of Federal Judges,* 17 Buffalo L.Rev. 799 (1968). Nothing more can be suggested by way of guidance than that there be a concerned interest in *ascertaining whether the public impression will be favorable, even though the judge is convinced of his own impartiality.* The question never centers on the reasonableness or fairness of the image which is being created, but rather on the actual character of that image. *See Rosen v. Sugarman,* 357 F.2d 794 (2d Cir. 1966). (Emphasis added.)

---

1. Formerly, 28 U.S.C. § 455 required, in pertinent part, that a judge recuse himself when a prior relationship rendered it improper "in his opinion" to sit. However, the 1974 amendment shelved this subjective test for the objective reasonable factual basis-reasonable man test. *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

Finally, paragraph 62f, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

> Among the grounds of challenges for cause against members of special and general courts-martial and, unless otherwise indicated by the context, the military judge are the following:

> .    .    .    .    .

> (13) Any other facts indicating that he should not sit as a member or military judge in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality.

Indeed, public confidence in the administration of military justice, as affected by the public impression of the fairness and impartiality of the proceedings, demands the conclusion that this judge—who, in the genesis stages of this case, was the chief legal officer in the prosecuting jurisdiction and the personal staff legal adviser to the general court-martial convening authority—ought to have granted the defense challenge for cause against him. His failure to do so was an abuse of his sound discretion.

FLETCHER, Chief Judge (concurring in part, dissenting in part):

I perceive the judge's prorogued action regarding the motions to suppress evidence as detrimental to good court procedure. Such delay not only impedes the defendant in his determination of a proper plea and his optional request to appear before the military judge alone, but simultaneously precludes a pretrial government decision on the sufficiency of its evidence. These determinations are more easily and properly made under what I believe the better practice: a pretrial hearing for motions to suppress evidence. Such a procedure was approved in spirit in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and its progeny. Though I condemn the procedure used here, that condemnation is not sufficient in and of itself to require a new trial.

I concur with the conclusion of the majority regarding the preemption issue.