**UNITED STATES**

v.

**Vincent J. SCIMECA, 099 54 5160, Corporal (E-4), U. S. Marine Corps.**

**NMCM 81 1279.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 26 Nov. 1980.

Decided 25 Feb. 1982.

MAJ James P. Axelrod, USMC, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BAUM and BOHLEN, JJ.

BAUM, Judge:

Appellant was tried by a special-court martial, judge alone, and found, contrary to his pleas, guilty of conspiracy to steal some steaks, the larceny of those steaks, housebreaking into a freezer, a false swearing in regard to the investigation of the stolen meat, and dereliction of duty by being in the company of a female while on duty as the Military Patrol Supervisor, violations of Articles 81, 121, 130, 134, and 92, Uniform Code of Military Justice (UCMJ/Code), 10 U.S.C. §§ 881, 892, 921, 930, 934, respectively. Appellant was found not guilty of a solicitation to commit the larceny, three specifications of communicating a threat, unlawful reception of stolen goods, and unlawful concealment of stolen goods, all alleged violations of Article 134, UCMJ. The military judge sentenced appellant to six months confinement at hard labor, forfeiture of $334.00 pay per month for six months, reduction to pay grade E-1, and a bad-conduct discharge. The convening and supervisory authorities approved the sentence as adjudged.

Appellant, in his first assignment of error, asserts that the freezer outside the Staff Non-commissioned Officers (NCO) Club, is not a "building or structure" which can be the subject of housebreaking. We disagree. The particular facts of the case, the language of the *Manual for Courts-Martial, 1969 (Rev.) (MCM/Manual),* and judicial interpretation of similar issues demonstrate that appellant's assertion is without merit.

Although there is conflicting testimony, the relevant events which were the subject of the present charges are fairly clear. In the early morning hours of 15 August 1980, appellant was patrol supervisor with the Military Police at Cherry Point, North Carolina. During this time, two subordinates, Private First Class S. and Private F. were directed by appellant to go to the Staff NCO Club freezer. This freezer was an outdoor "walk-in" freezer attached to the club building. The men were instructed to

gain entry into that freezer and further instructed to get some food for an upcoming squad promotion party. PFC S. and PVT F. proceeded to the freezer, jimmied the lock off the freezer door and stole two boxes of steaks. The two men later placed the steaks in appellant's car. Some of the steaks were consumed later that day at the promotion party, and approximately twelve cuts of the meat were found in appellant's home.

Article 130, UCMJ, states:

Any person subject to this chapter who unlawfully enters the building or structure of another with the intent to commit a criminal offense therein is guilty of housebreaking and shall be punished as a court-martial may direct.

Paragraph 209, MCM, states in part:

The word "building" includes a room, shop, office, store or apartment in a building. As used in this article, the word "structure" refers only to those structures which are in the nature of a building or dwelling. Examples of these structures are a stateroom, hold, or other compartment of a vessel, an inhabitable trailer, an enclosed goods truck or freight car, a tent, and a houseboat. It is not necessary that the building or structure be in use at the time of the entry.

The model specification for housebreaking mirrors these definitions:

In that ... did, (at) (on board) ..., on or about ... 19 ..., unlawfully enter the (dwelling) (room) (bank) (store) (warehouse) (shop) (tent) (stateroom) ( ) of ..., with intent to commit a criminal offense, to wit: ..., therein.

Appendix 6c, Specification 112, MCM.

The definition of "building or structure" as used in housebreaking or unlawful entry offenses was extensively addressed in *United States v. Gillin*, 8 USCMA 669, 25 CMR 173 (1958). There, the Court of Military Appeals was faced with the question of whether an automobile could be the subject of a housebreaking. Since the *Manual* did not specifically address that item, the intent of Congress was gleaned from the enactments proscribing crimes in the District of Columbia. The housebreaking statute, District of Columbia Code, § 22–1801 (1951), explicitly enumerated the property which was protected. Mentioned was a dwelling, room, steamboat, canal boat, vessel, other watercraft, railroad car, lumber yard, coal yard or any other yard where goods are kept for storage in trade. *Id.* at 671–672, 25 CMR 175–176. A subsequent case, *United States v. Taylor*, 12 USCMA 44, 30 CMR 44 (1960), followed the analytical approach of *United States v. Gillin*, and addressed the applicability of housebreaking to an airplane. Both ruled that housebreaking was not the properly alleged offense for either an automobile or airplane.

The focal point of the Court's analysis was the nature of the construction's use. Applying a statutory interpretation which is apparently akin to the doctrine of *ejusdem generis*,[1] the Court reasoned that neither an automobile nor an airplane is designed for use as a habitation or storage place, as intended by legislative enactment.

Despite the general guidance offered by *United States v. Gillin, supra,* and subsequent cases which address the meaning of "structure or building," as used in housebreaking specifications, the decisions still fail to provide clear cut answers as to the precise limits of the offenses. *United States v. Wickersham*, 10 MJ 615, 616 (AFCMR 1980). In *Wickersham*, the accused had entered a civil engineering compound storage area surrounded by a chain link fence. The Air Force Court of Military Review examined civilian and military cases related to similar instances of housebreaking or unlawful entry, and concluded that since the fence was clearly erected to pro-

---

1. In the construction of a statute, for the purpose of determining whether a given edifice is a "structure or building," the rule of *ejusdem generis* is frequently applied. Consequently, where the generic terms "building or structure" are added to, or follow, the enumeration of specific words listing particular places as possible objects of housebreaking, they have been interpreted as governing only such constructions as are of the same nature and kind as the specifically mentioned construction. *See* Annot. 78 A.L.R.2d 778 (1961).

tect property within its confines from theft, its function was analogous to that of a "structure." *Id.* at 617. The examination of civilian cases similar to the present issue would also be a helpful tool here. *See id.* at 617, n. 10.

Corncribs, chicken coops, smokehouses, powder magazines, refrigerators and other storehouses used for such items as clothing, hides, beer, cotton, shoes and dry goods have all been considered "buildings or structures" within the meaning of civilian burglary or housebreaking statutes. Factors which civilian courts often look to are: (a) the intended purpose of the construction—generally to store and protect objects of commercial and personal use; (b) the nature of the construction—generally a requirement that there be an enclosure of sorts (walls, a roof and a floor of some secure substance); (c) the permanent character of the construction—closely akin to factors (a) and (b); (d) the size of the construction—generally, the edifice should be large enough for a man to stand upright and move around in, or at least large enough for entry and exit of a person and objects therein; and (e) the location of the construction—generally in relation to a dwelling which utilizes the structure. *See* Annot. 79 A.L.R.2d 778 (1960). These factors closely parallel the examples and judicial interpretation established for the military offense of housebreaking, and when applied to the present case, the result is clearly consistent with the *Manual* and Code provisions.

The freezer which is the subject of the present offense was a permanent enclosure, large enough for the entry of two men and the storage of large quantities of foodstuff. There was a padlock on the door which was obviously intended to protect the enclosed items from theft. The freezer was apparently located in close proximity, if not attached, to the Staff NCO Club. This construction clearly falls within the general range of structures intended by Congress to be the subject of a housebreading offense. Consequently, we hold that a walk-in freezer, used for the storage of foodstuff and clearly intended for the protection of goods from theft is a "structure" or "building" within the meaning of Article 130, UCMJ.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed. A supplementary court-martial order should be issued to accurately reflect the findings of guilty by exceptions and substitutions as to Charge I and its specification.

Senior Judge GLADIS and Judge BOHLEN concur.