**UNITED STATES, Appellee,**

v.

**Private E2 Clark G. VENTURA, 576–02–3157, United States Army, Appellant.**

**ACMR 9200446.**

U.S. Army Court of Military Review.

8 Feb. 1993.

For Appellant: Captain Robin N. Swope, JAGC, Captain Victor A. Tall, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Major Donna L. Barlett, JAGC, Captain Richard O.I. Brown, JAGC (on brief).

Before WERNER, Senior Judge, and GRAVELLE, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

In accordance with his pleas, the appellant was convicted by a general court-martial of disobeying lawful orders (three specifications), making a false official statement, wrongful appropriation (four specifications), and falsely making the signature of another with intent to deceive (two specifications), in violation of Articles 92, 107, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, 921, and 934 (1982) [hereinafter UCMJ]. Pursuant to a pretrial agreement, the convening authority ultimately approved a sentence that provided for a bad-conduct discharge, confinement for twelve months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant contends that his guilty pleas to falsely making another's signature with intent to deceive were improvident for lack of a legal basis for the pleas. Specifically, the appellant asserts that the charge of falsely making the signature of another in violation of Article 134, UCMJ, is preempted by the offense of forgery, a violation of Article 123, UCMJ, 10 U.S.C. § 923. We disagree.

The relevant facts were set forth in a stipulation of fact appended to the pretrial agreement and the appellant's responses to questions from the military judge during the providence inquiry. In the course of applying for two personal loans from the Fort Campbell, Kentucky, Credit Union, the appellant falsely and without authority made the signatures of his company commander and first sergeant on an information form adjunct to the application. On the form, the appellant falsely represented to loan approval officials at the credit union that he had a good credit and disciplinary record and was not about to be reassigned or discharged from the Army. As a result of the deceptions, the loans were approved. The appellant admitted that his conduct was prejudicial to good order and discipline and discrediting to the armed forces.

The doctrine of preemption was first enunciated in military jurisprudence in *United States v. Norris*, 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953), wherein an accused who had been charged with the specific intent offense of larceny, in violation of Article 121, UCMJ, was convicted of the general intent offense of "wrongful taking" of property in violation of Article 134, UCMJ. After analyzing the legislative history of Article 121, UCMJ, the court concluded that Congress intended that the offense of larceny and its lesser included offense of wrongful appropriation, should encompass all criminal conversions of property in which the *mens rea* included specific intent. The court opined that offenses charged under Article 134, UCMJ:

should generally be limited to military offenses and those crimes not specifically delineated by the punitive Articles. See Winthrop's Military Law and Precedents, 2d. ed., 1920 Reprint, page 720. As the Manual itself notes, there is scarcely an irregular or improper act conceivable which may not be regarded as in some indirect or remote sense prejudicing military discipline under Article 134. Manual for Courts–Martial, United States, 1951, page 381. We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes

and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134.

*Id.* at 39. Hence, the "wrongful taking" of the property of another without the specific intent to deprive the owner of his interest therein could not be prosecuted as an offense under Article 134 of the Code.

In the forty years since *Norris,* the court has not fashioned a "bright line" test for determining when preemption should be applied. However, it has "never repudiated the preemption doctrine, which rests on the well-recognized principle of statutory interpretation that if the legislature has explicitly prohibited certain conduct, then it did not intend also to prohibit other conduct which, though similar, does not meet the statutory requirements of criminal liability." *United States v. Taylor,* 23 M.J. 314, 316–17 (C.M.A.1987). More recently, the court observed, "[t]he rationale of preemption is that, if Congress has covered a particular kind of misconduct in specific punitive articles of the Uniform Code, it does not intend for such misconduct to be prosecuted under the general provisions of Article 133 or 134." *United States v. Reichenbach,* 29 M.J. 128, 136–37 (C.M.A. 1989).

In determining whether preemption applies, two questions must be answered affirmatively: (1) Whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; and, (2) Whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of one of the general articles (Article 133, 10 U.S.C. § 933 or 134). *United States v. Wright,* 5 M.J. 106, 110–11 (C.M.A.1978); *United States v. Wiegand,* 23 M.J. 644 (A.C.M.R.1986), *pet. denied,* 25 M.J. 197 (C.M.A.1987). In other words, "simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine.... In addition, it must be shown that Congress intended the other

punitive article to cover a class of offenses in a complete way." *United States v. Kick,* 7 M.J. 82, 85 (C.M.A.1979) (citations omitted).

The Court of Military Appeals has suggested, on facts remarkably similar to those of the instant case, that Congress did not preempt the field of forgery prosecutions when it promulgated Article 123, UCMJ. *United States v. Thomas,* 25 M.J. 396 (C.M.A.1988). In *Thomas,* the appellant also attempted to secure a loan from a credit union. He presented a letter to the credit union, purportedly signed by his commanding officer, which indicated that he had no disciplinary or financial problems and was an excellent soldier. The record indicated that the information in the letter was false and that the commanding officer's signature had been falsified, possibly by another soldier. The appellant withdrew the letter after the falsity of the document was discovered.

The court held that the appellant could not be convicted of the offense of uttering a forged instrument under Article 123, UCMJ, as a matter of law. The court observed that the express language of the statute severely limits the scope of the offense. The offense is only established where the false and fraudulent making or altering of the signature of another on a writing, or the knowing uttering, offering, issuing or transfer of such writing would, if genuine, *"apparently impose a legal liability on another or change his legal right or liability to his prejudice."* UCMJ, art. 123. Moreover, the court noted that Congress has consistently rejected a much broader definition of forgery originally proposed by The Judge Advocate General of the Army which would have proscribed the false making or alteration of *"any writing of a public or private nature, which might operate to the prejudice of another"* regardless of its legal efficacy. Finally, the court determined that, although the commanding officer's signature on the letter the appellant uttered had been altered and had a tendency to defraud, the document did not impose or

alter the legal liability of anyone. The court opined, however:

> This is not to suggest that appellant committed no crime or that the Government is without legal recourse to punish the misconduct. We shall not, however, attempt here to anticipate and pass upon the several avenues that may be available to the Government. We are mindful that Article 123, in its present form, creates a trap for unwary prosecutors, in that the legal-efficacy requirement may be overlooked. Our review, however, convinces us that Congress meant to inscribe this requirement into the law of forgery. If it is time to relax or abolish the requirement, that is a judgment for Congress to make.

*Thomas*, 25 M.J. at 402.

■ We are satisfied that Congress has not preempted the field of forgery by promulgation of Article 123, UCMJ. An accused's fraudulent making of signatures of his superiors on forms accompanying his application for a loan does not change the legal liability of another. Therefore, it does not amount to forgery. However, under the circumstances of this case, it may violate Article 134, UCMJ. Accordingly, the appellant's pleas of guilty were provident.

We have considered the other errors assigned by the appellant including those personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982) and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge GRAVELLE and Judge DELL'ORTO concur.