UNITED STATES

v.

James F. McGUINNESS, 147 44 6604, Operations Specialist Chief (E-7), U.S. Navy.

NMCM 89 2090.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 27 Jan. 1989.

Decided 7 Aug. 1991.

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

LT L. Lynn Jowers, JAGC, USN, Appellate Government Counsel.

Before WILLEVER, STRICKLAND, and JONES, JJ.

STRICKLAND, Senior Judge:

Consistent with his pleas, appellant was found guilty at a general court-martial of two specifications of violating a general regulation, Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, and two specifications of violating the Federal Espionage Act, 18 U.S.C. §§ 793(e) and 793(f), as incorporated by clause 3 of Article 134, UCMJ, 10 U.S.C. § 934.[1] The military judge sentenced appellant to confinement for two years, forfeiture of all pay and allowances, reduction to E–1, and a bad-conduct discharge. The convening authority approved the adjudged findings and sentence.

On appeal[2] the appellant assigned five errors and one additional error.[3] As to

---

1. The regulation that appellant violated was OP-NAVINST 5510.1G, Department of the Navy Information and Personnel Security Program Regulation, dated 20 April 1984. The appellant had removed, over a number of years, approximately 311 pieces of classified materials from their secured areas and stored them at his residence. Appellant asserted, and there was no evidence to the contrary, that the classified information had been unlawfully retained for future professional use as reference materials.

2. We have also heard oral argument.

3. I. THE MILITARY JUDGE ERRED BY ACCEPTING THE APPELLANT'S GUILTY PLEA TO VIOLATING THE FEDERAL ESPIONAGE ACT BECAUSE THE SAME MISCONDUCT COULD HAVE BEEN CHARGED AS THE AR-

error IV, the Government conceded that the appellant did not affirmatively waive the statute of limitations as to Specification 5 of Charge II (the § 793(f) charge) and agreed the specification should be dismissed. We also agree. As to the additional error, this Court decided the same issue in *United States v. Allen* 31 M.J. 572 (N.M.C.M.R.1990) (*en banc*), *pet. granted*, and therefore, we find it has no merit. The remaining assigned errors will be discussed individually.

## I. Preemption Doctrine

Appellant has presented a novel argument on the application of the preemption doctrine to the Article 134 charge. He argues that there exist two preemption doctrines: first, the statutory doctrine contained in Para. 60c(5)(a), Part IV, Manual for Courts–Martial (MCM), United States, 1984; and, second, the common law doctrine discussed in *United States v. Wright*, 5 M.J. 106 (C.M.A.1978). It is the application of the statutory doctrine that he claims prohibits the Article 134 offense charged in this case because it could have been charged as a violation of a lawful regulation under Article 92.

The exact language from Para. 60c that appellant cites as authority follows: "The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." However, appellant has not cited and we are unable to find any authority for the proposition that there exist two preemption doctrines. Instead, in *United States v. Ettleson*, 13 M.J. 348 (C.M.A.1982) and *United States v. Courtney*, 1 M.J. 438 (C.M.A.1976), implicit judicial approval was given to charging the same criminal act under Article 92 or Article 134. Also, our examination of the doctrine's purpose, which is to prevent the Government from redefining crimes by eliminating vital elements from offenses specified by Congress and then charging the remaining elements as an offense in violation of Article 134, convinces us that there is but one preemption doctrine.[4] Further, we find support for this conclusion from the analysis to Article 134 which cites *Wright* and numerous other pre–1984 cases for examples of how the doctrine should be applied in specific circumstances. Analysis, Para. 60, A21–99, MCM. Accordingly, we find that Para. 60c(5)(a), MCM, is the codification of the judicially created pre-

TICLE 92 OFFENSE OF VIOLATING THE INFORMATION SECURITY REGULATION.

A. *Prosecution under 18 U.S.C. § 793(e) for Unauthorized Retention of Classified Documents Was Preempted by the Article 92 Offense of Violating OPNAVINST 5510.1G §§ 10–10, 10–12.*

B. *Prosecution under 18 U.S.C. § 793(f)(1) for Permitting Removal of Classified Documents from their Proper Place of Custody Was Preempted by the Article 92 Offense of Violating OPNAVINST 5510.1G § 13–2 (1984).*

II. THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEA OF GUILTY TO WILLFULLY RETAINING CLASSIFIED MATERIALS OF WHICH HE HAD UNAUTHORIZED POSSESSION WHEN THE PROVIDENCE INQUIRY REVEALED THAT APPELLANT WAS INITIALLY AUTHORIZED TO POSSESS THE MATERIALS.

III. THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEA OF GUILTY TO WILLFULLY RETAINING CLASSIFIED MATERIAL BECAUSE THE PROVIDENCE INQUIRY DID NOT ESTABLISH THAT APPELLANT ACTED IN BAD FAITH.

IV. THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEA OF GUILTY

TO CHARGE II, SPECIFICATION 5 BECAUSE ANY VIOLATION OCCURRED MORE THAN TWO YEARS BEFORE THE RECEIPT OF SWORN CHARGES AND APPELLANT DID NOT AFFIRMATIVELY WAIVE THE STATUTE OF LIMITATIONS.

V. A SENTENCE WHICH INCLUDES AN UNSUSPENDED BAD–CONDUCT DISCHARGE AND TWO YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE FOR THE OFFENSE OF REMOVING CLASSIFIED DOCUMENTS FROM THEIR PROPER PLACE OF STORAGE AND KEEPING THEM AT HOME IN AN UNSECURED AREA.

*Additional Assignment of Error:*

THE CONVENING AUTHORITY WAS SUBJECTED TO UNLAWFUL COMMAND INFLUENCE THROUGH THE SECRETARY OF THE NAVY'S ISSUANCE OF "POLICY GUIDANCE" STATING THAT NATIONAL SECURITY CASES "SHOULD ORDINARILY BE REFERRED TO TRIAL BY GENERAL COURT–MARTIAL." [Footnote omitted.]

4. Even though we find that there is only one preemption doctrine, we note that it is stated twice in the MCM: first, Para. 60c(1), MCM, and second, Para. 60c(5)(a).

emption doctrine first discussed in *United States v. Norris*, 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953).

■ To apply the preemption doctrine two questions must be answered in the affirmative: first, did Congress intend to limit prosecution of certain criminal activities to "offenses defined in specific articles of the code", and second, is the offense charged composed of the residual "elements of a specific offense and asserted to be a violation of ... Article 134...." *Wright*, 5 M.J. at 110–11, citing *Norris*.

■ In answering these two questions we find that the preemption doctrine does not apply. As to the first question, even though Congress did not prohibit appellant's actions in a specific Article of the UCMJ, Congress did make appellant's actions criminal in a specific section of Title 18 of the U.S. Code which is incorporated into the UCMJ. Clearly Congress intended that its specific declaration of a criminal statute, which carries a maximum of 10 years confinement, would take precedence over any general criminal prohibition, which carries a less severe maximum of only 2 years. It strains credulity to say that a regulation written by the Chief of Naval Operations, which if violated is charged under Article 92, could preempt a specific federal criminal statute enacted by Congress and incorporated into the UCMJ by Article 134. As to the second question, the charge appellant was convicted of was not modified nor composed of any residual elements but instead consisted of the specific elements of 18 U.S.C. § 793 as established by Congress. Accordingly, we hold that the preemption doctrine is inapplicable to the Article 134 charge appellant was convicted of herein, even though he could have also been charged for violating Article 92. *See United States v. Reichenbach*, 29 M.J. 128 (C.M.A.1989). The Government acted within the bounds of its lawful discretion in deciding to charge appellant with violating 18 U.S.C. § 793. *See United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Irvin*, 21 M.J. 184, 188 (C.M.A.), *on remand*, 22 M.J. 559 (A.F.C.M.R.), *aff'd in part, dismissed in part*, 22 M.J. 342 (C.M.A.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).

## II. Sufficiency of Providence Inquiry to 18 U.S.C. § 793(e)

Appellant asserts that his guilty plea to the 18 U.S.C. § 793(e) charge is improvident because this subsection only makes criminal the "unauthorized" possession and retention of classified materials when it was established during the plea inquiry that appellant was initially authorized to possess the classified materials even though he went beyond the scope of his authorization and possessed materials at his residence. Appellant argues that because he was initially "authorized" to possess the classified materials, he always remained "authorized" to possess the materials and therefore, he cannot be guilty of violating § 793(e). Instead, appellant reasons that because he was "authorized" to possess the classified materials, the Government was required to make a demand on appellant to return the documents which is an essential element of a prosecution under § 793(d) but which is inconsistent with the subsection of which he was found guilty. In support of his argument that the term "unauthorized possession" is ambiguous and therefore should be construed narrowly against the Government, appellant has cited our unpublished opinion in *United States v. Volin*, No. 88 1130 (N.M.C.M.R. 19 April 1989), and the case of *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir.1980), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982).

■ As a guide in determining the definition of the term "unauthorized possession" as it is used in § 793(e), we look to the direction given in *Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). In that case, the Supreme Court established three steps a court uses in defining the terms of a criminal statute. First, a court should give all the terms used in the statute their ordinary meaning. Second, if a possible ambiguity exists in the statute when a term's ordi-

nary meaning is used, then a court must examine the legislative history and motivating policies of Congress in enacting the statute to resolve the ambiguity. And finally, if after applying steps one and two, a reasonable doubt still exists about a statute's intended scope, then the Court will apply the rule of lenity and resolve the ambiguity in favor of the appellant. *Id.,* —— U.S. at ——, 111 S.Ct. at 465, 112 L.Ed.2d at 458.

In resolving this alleged error, we first look to the language of 18 U.S.C. § 793(e). This subsection reads:

(e) Whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it;

. . . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Because we find that the term "unauthorized possession" may be open to the interpretation forwarded by appellant, it is necessary to examine the relevant history of § 793. Prior to September 23, 1950, subsection (e) of § 793 read as follows:

Whoever, lawfully or unlawfully having possession of, access to, control over, or being intrusted with any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national

defense, willfully communicates or transmits or attempts to communicate or transmit the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive;

. . . . .

Shall be fined not more than $10,000 or imprisonment not more than ten years, or both.

The House report that accompanied the September 23 amendment reported why Congress foresaw a need to amend the statute:

serious gaps in our present laws permit people, both citizens and aliens alike, opportunities to acquire information vital to our national security and to use that information to the disadvantage and danger of the United States without fear of prosecution in our courts.

H.R.Rep. No. 647, 81st Cong., 1st Sess. (1949) at 2. Specifically regarding subsection (e), Congress, in dividing the then-existing subsection into subsections (e) and (f), intended that the statutory change would produce the following effect:

Subsection 1(e) provides separately for those who, having unauthorized possession of certain enumerated classes of items, refuse to surrender them to authorized officials regardless of a demand being made. Existing law provides no penalty for the unauthorized possession of such items unless a demand for them is made by a person entitled to receive them. Thus subsection 1(e) differs from subsection 1(d) primarily in that a demand for return is a necessary element in making out a case in the latter instance, while it is not required in the former. The term "unauthorized possession" is used deliberately in preference to "unlawful possession," so as to preclude the necessity for proof of illegal possession.

*Id.,* at 4.

■ From a reading of the legislative history, we find that it was the intent of Congress to broaden the statute by elimi-

nating the requirement that a demand be made for the return of materials relating to the national defense in certain instances. We must next analyze whether the interpretation advanced by appellant is consistent with this intent. Appellant's theory that once the possession of materials is authorized, it remains authorized, would force a peculiar result. Appellant would only be criminally liable under this statute for the removal of classified material (of which he had authorized access) to his home in the civilian community if the Government made a demand for its return. In order for the Government to make such a demand, it would have to know of appellant's actions, actions which appellant or anyone else would certainly conceal. We believe that such an interpretation would thwart the Congressional intent and purpose behind subsection (e).

Accordingly, we find that appellant's initial authorized possession of the classified materials became unauthorized when he exceeded the parameters of the entrustment given to him to possess, have access to, or control the classified materials. Thus, appellant's unauthorized possession satisfied the first element of § 793(e). Furthermore, in retaining the documents that he had a reason to know could be used to the injury of the United States or to the advantage of any foreign nation and failing to return them to a duly authorized officer to receive the materials, appellant satisfied the second element of subsection (e) and was, therefore, guilty of violating § 793. Accordingly, his pleas of guilty were provident.

As to the two cases cited by the appellant as authority for his argument that because he was initially an authorized possessor of the classified documents he did not violate § 793(e), we distinguish those cases on their facts. First, as appellate government counsel points out in her brief, *Volin* is a sufficiency of the evidence case and does not establish a rule of law concerning the definitions of terms used in § 793(e). Second, the footnote cited by ap-

pellant from the case of *Truong Dinh Hung*, in which the Court of Appeals mentioned that there existed a possible ambiguity in § 793(e), merely establishes with approval how the district judge artfully constructed his instructions so as to avoid the potential ambiguity, and therefore, it does not provide legal support for appellant's argument.

### III. The Mens Rea Requirement for § 793(e)

Appellant has also argued that his plea to the § 793(e) charge is improvident because the military judge failed to include within the "willful" mens rea requirement a bad faith purpose. Appellant has cited *Truong Dinh Hung* and *United States v. Morison*, 844 F.2d 1057, 1071 (4th Cir. 1988), for support.

The two cases cited by appellant, however, involved the appellate review of the jury instructions given by the trial judge. They do not establish a rule of law that § 793(e) requires a bad faith purpose. We are aware of no case that creates a requirement of a bad faith purpose and a reading of the legislative history reveals that Congress specifically did not intend for such requirement in § 793(e). *See* H.R.Rep. No. 647, 81st Cong., 1st Sess. (1949), at 3 (subsections (d) and (e) were specifically drafted without the need for an element of intent, while subsections (a), (b), and (c), in contrast, have an express requirement of intent.)[5] Accordingly, we hold that appellant was properly advised as to the mens rea requirement for a conviction under § 793(e) and that he admitted facts sufficient to establish his guilt.

### IV. Appropriateness of Sentence

Upon review of the record of trial, the offenses of which appellant stands convicted, and the evidence offered in extenuation and mitigation, we find that a sentence including an unsuspended bad-conduct discharge and two years confinement is appropriate. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988).

---

**5.** The cited legislative history mentions only subsection (d) specifically, however, we believe

that Congress intended that it also apply to subsection (e).

## Conclusion

We hereby dismiss Specification 5 of Charge II. In adjudging the sentence, the military judge found all four offenses multiplicious and therefore, even with the dismissal of Specification 5 of Charge II appellant has suffered no prejudice. The remaining findings of guilty and the adjudged sentence are affirmed.

Chief Judge WILLEVER and Senior Judge JONES concur.