**UNITED STATES, Appellee,**

v.

**James F. McGUINNESS, Operations Specialist Chief, U.S. Navy, Appellant.**

**No. 67,241.**
**NMCM 89 2090.**

U.S. Court of Military Appeals.

Argued May 7, 1992.

Decided Sept. 14, 1992.

For Appellant: *Captain Dwight H. Sullivan,* USMC (argued).

For Appellee: *Lieutenant Ralph G. Stiehm,* JAGC, USNR (argued); *Colonel*

*T.G. Hess,* USMC (on brief); *Major Laura L. Scudder,* USMC.

### Opinion of the Court

GIERKE, Judge:

Before a military judge sitting as a general court-martial, appellant pleaded guilty to two specifications of violating a Navy Regulation (OPNAVINST 5510.1G) by failing to safeguard classified materials in his possession, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, and violating 18 USC § 793(e) and § 793(f)(1), charged under Clause 3* of Article 134, UCMJ, 10 USC § 934. The military judge sentenced him to a bad-conduct discharge, confinement for 2 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The Court of Military Review set aside the conviction of 18 USC § 793(f)(1) because prosecution was barred by the statute of limitations, affirmed the remaining findings of guilty, and affirmed the sentence. 33 MJ 781, 783 (1991). We granted review of the following issues:

### I

DOES THE MANUAL FOR COURTS-MARTIAL'S PREEMPTION PROVISION PROHIBIT THE GOVERNMENT FROM TRYING AN ACCUSED FOR THE ARTICLE 134 OFFENSE OF VIOLATING THE FEDERAL ESPIONAGE ACT WHERE THE SAME MISCONDUCT COULD HAVE BEEN CHARGED AS THE ARTICLE 92 OFFENSE OF VIOLATING THE NAVY'S INFORMATION SECURITY REGULATION?

### II

DOES APPLICATION OF 18 USC § 793(e) TO A CASE WHERE A SERVICEMEMBER HAD AN APPROPRIATE SECURITY CLEARANCE AND INITIALLY CAME INTO POSSESSION OF CLASSIFIED DOCUMENTS IN THE PERFORMANCE OF HIS OFFICIAL DUTIES VIOLATE THE FIFTH AMENDMENT NOTICE REQUIREMENT?

### III

MAY A SERVICEMEMBER BE CONVICTED OF AN 18 USC § 793(e) VIOLATION WHERE HE RETAINED CLASSIFIED DOCUMENTS WITH THE INTENT TO USE THEM IN THE PERFORMANCE OF HIS OFFICIAL DUTIES?

Appellant had been in the Navy for over 18 years and had been an operations specialist for 16 years. He had handled classified materials during his entire career as an operations specialist. One of the violations of Navy regulations and the statutory violation were based on appellant's retention of 311 classified items, acquired during previous assignments, and taking them home where he did not properly safeguard them.

The pertinent portion of paragraph 13-2.1, OPNAVINST 5510.1G (1984) provides: "Any one who has possession of classified material is responsible for safeguarding it at all times and particularly for locking classified material in appropriate security equipment whenever it is not in use or under direct supervision of authorized persons." Title 18 USC § 793(e) prohibits anyone "having unauthorized possession of, access to, or control over," classified mate-

---

* Article 134 provides: "Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court." The "crimes and offenses not capital" provision is commonly referred to as "Clause 3." Paragraph 60c(4)(b), Part IV, Manual for Courts-Martial, United States, 1984, explains: "Certain noncapital crimes and offenses prohibited by the United States Code are made applicable under Clause 3 of Article 134 to all persons subject to the code regardless where the wrongful act or omission occurred."

rial from "willfully retain[ing] the" material "and fail[ing] to deliver it to the officer or employee of the United States entitled to receive it."

During the plea inquiry, appellant told the military judge that he had lawfully acquired the classified items during previous assignments and retained them in his home as personal reference material. He told the military judge that, when he completed his previous assignments, he was required to either return or destroy the documents, or to transmit them through authorized channels to his next duty station. The military judge inquired into appellant's knowledge of the proper security procedures as follows:

> MJ: Would it be safe to say that you've been working with classified material since you first became an [operations specialist]?
>
> ACCUSED: Yes, sir.
>
> MJ: And have you had regular briefings, and lectures, and training in the proper methods of handling, safeguarding, and storing classified material?
>
> ACCUSED: At each duty station, we were given that.
>
> MJ: And as a chief petty officer, were you even, yourself, involv[ed] in giving that kind of training to lower rated people?
>
> ACCUSED: Yes, sir.
>
> MJ: And maybe even enforcing those kinds of rules within the spaces under your control?
>
> ACCUSED: Yes, sir.
>
> MJ: So was there any doubt in your mind what your obligations were with regard to the storage, handling, access, removal, or whatever of classified material?
>
> ACCUSED: No, sir. There was no doubt as to my responsibility.

The military judge treated all four offenses to which appellant pleaded guilty as separate for findings, but he treated them as a single offense for sentencing.

## I. Preemption

■ Appellant contends that the preemption doctrine in paragraph 60c(5)(a), Part IV, Manual for Courts–Martial, United States, 1984, prohibits prosecuting him for a violation of 18 USC § 793(e), incorporated into the Uniform Code of Military Justice by Clause 3 of Article 134, because the same conduct is punishable under Article 92. Paragraph 60c(5)(a) states: "The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." Appellant argues that this provision created a new preemption doctrine, more stringent than the previous common-law doctrine. We agree with the court below (33 MJ at 783–84) that the Manual provision did not create a new preemption doctrine but merely codified existing military law. Drafters' Analysis to paragraph 60c(5)(a), Manual, *supra* at A21–99.

Paragraph 60c(5) codifies a doctrine articulated early in this Court's history that "Article 134 should generally be limited to military offenses and those crimes not specifically delineated by the punitive Articles." *United States v. Norris*, 2 USCMA 236, 239, 8 CMR 36, 39 (1953). The doctrine provides

> that where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element.

*United States v. Kick*, 7 MJ 82, 85 (CMA 1979). Congress has "occupied the field" if it "intended for one punitive article of the Code to cover the type of conduct concerned in a comprehensive ... way." *United States v. Maze*, 21 USCMA 260, 262, 45 CMR 34, 36 (1972).

■ Preemption applies only if two questions are answered in the affirmative:

> The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; the secondary

question is whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of either Articles 133 or 134, which, because of their sweep, are commonly described as the general articles. *United States v. Wright,* 5 MJ 106, 110–11 (CMA 1978).

The underlying basis for the preemption doctrine is Congress' and this Court's long-standing unwillingness to permit prosecutorial authorities "to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134." *United States v. Norris,* 2 USCMA at 239, 8 CMR at 39.

Turning first to the question whether Congress has "occupied the field," the specific question in this case is whether Congress intended that prosecutions for failure to properly safeguard classified materials be limited to regulatory violations charged under Article 92. We answer that question in the negative. None of the punitive articles of the Code specifically cover the duty to protect classified information. We have found nothing in the legislative history of Articles 92 and 134 indicating that Congress intended that general orders would preempt offenses made applicable to the military by Clause 3 of Article 134.

The second question posed in *Wright* is likewise answered in the negative. Appellant was not charged with the "residuum" of another punitive article but, rather, with a violation of a specific penal statute codified as 18 USC § 793(e).

We hold that prosecution of violations of 18 USC § 793(e) under Clause 3 of Article 134 is not preempted by Article 92. *Cf. United States v. Baba,* 21 MJ 76 (CMA 1985)(regulatory violation charged under Article 92 and violation of 18 USC § 793(d), charged under Article 134, held multiplicious for findings, but preemption not considered); *United States v. Ettleson,* 13 MJ 348, 358–59 (CMA 1982)(drug offense could be charged under either Article 92 or Article 134).

## II. Notice of Criminality

■ Appellant contends that 18 USC § 793(e) does not give adequate notice of criminality because the term "unauthorized" is too vague. The prosecution theory was that appellant's possession of classified materials, although initially authorized, became "unauthorized" when he retained them and took them home. Appellant cites *United States v. Truong Dinh Hung,* 629 F.2d 908 (4th Cir.1980), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982), and *United States v. Morison,* 844 F.2d 1057 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988), in support of the proposition that the term "unauthorized" presents "potential vagueness problems."

We need not decide whether some hypothetical situation might present "potential vagueness problems." The question in this case is whether appellant was on notice that keeping the classified materials, which he had lawfully acquired during previous assignments, and storing them in his home was "unauthorized." As observed by the Supreme Court:

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

We need to decide only whether appellant's conduct "is plainly within" the terms of the statute, "even though marginal cases could be" postulated "where doubts might arise." *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). If appellant is not one of the "rare 'entrapped' innocents but one to whom the statute clearly applies, he has no standing to challenge successfully the statute under which he is charged." *United States v. Morison,* 844 F.2d at 1071, *citing Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct.

2547, 2561, 41 L.Ed.2d 439 (1974). *See United States v. Scoby,* 5 MJ 160, 162–63 (CMA 1978) ("Where there is 'a substantial range of conduct' to which" a statute applies, the statute "is not fatally deficient, even though an area of uncertainty may remain.").

Appellant clearly was on notice that he was not authorized to retain the classified materials and store them in his home. During the plea inquiry, he told the military judge that he had worked with classified materials for the past 16 years and that he knew that he had no authority to retain the materials and store them in his home. He admitted to the military judge, "There was no doubt as to my responsibility." Appellant's conduct clearly was "unauthorized," and he admitted that he knew it. Accordingly, we reject his appellate claim that the statute was too vague to put him on notice that his retention of the classified material in his home was "unauthorized."

### III. Mens Rea

■ Appellant contends that the element of willfulness in 18 USC § 793(e) includes an element of bad faith, evidenced by a sinister purpose to injure the interests of the United States. The military judge defined the term "willful" as "an intentional violation of a known legal duty." Appellant argues that, because he intended only to keep the classified items as personal reference material in future duty assignments, he did not entertain the mens rea required by the statute. We disagree.

The statute in question is part of the Espionage Act of 1917, as amended by the Internal Security Act of 1950. "When a statute is a part of a larger Act ... the starting point for ascertaining legislative intent is to look to other sections of the Act *in pari materia* with the statute under review." *United States v. Morison,* 844 F.2d at 1064. Sections 793(a) and 794(a) require that the act be done, "with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation." Sections 793(d) and (e), however, require only that the accused act "willfully." The current version of § 793(e), as amended in 1950, criminalizes willful retention of classified materials by someone not authorized to retain them. Section 793(f) has an even lower threshold, punishing loss of classified materials through "gross negligence" and punishing failing to promptly report a loss of classified materials. While "§ 794 covers 'classic spying' "; § 793(e) "cover[s] a much lesser offense than that of 'spying.' " *Id.* at 1065.

Based on our analysis of the statute in question and a review of its legislative history, "we conclude that there is no basis in the legislative record for finding that Congress intended to limit" prosecutions for violation of § 793(e) "to 'classic spying.' " *Id.* at 1070. To the contrary, it is clear that Congress intended to create a hierarchy of offenses against national security, ranging from "classic spying" to merely losing classified materials through gross negligence. We hold, as did the court below, that appellant was properly advised of the requisite mens rea for a violation of § 793(e) and that he admitted facts sufficient to establish his guilt. *Cf. United States v. Morison, supra* (selling classified photographs in effort to obtain future employment by publisher violated § 793(d)); *United States v. Truong Dinh Hung,* 629 F.2d at 919 ("willfully" defined in terms of "personal or underhanded motive.")

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD and WISS concur.