# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 39127

————————————

### UNITED STATES
*Appellee*

#### v.

### Cody M. HARROWER
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 January 2018

————————————

*Military Judge:* Joshua E. Kastenberg.

*Approved sentence:* Dishonorable discharge, confinement for 17 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 9 March 2016 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Captain Patrick A. Clary, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge convicted Appellant, contrary to his pleas, of one specification of sexual assault of a child, two specifications of sexual abuse of a child, and two specifications of violating 18 U.S.C. § 2251 by enticing a child to take part in sexually explicit conduct for the purpose of producing a photograph of such conduct, in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority reduced the term of confinement to 17 months and approved the remainder of the sentence.

Appellant raises three issues for our consideration on appeal: (1) Whether his conviction for Specification 2 of Charge II, alleging enticement of a child in violation of 18 U.S.C. § 2251, is legally and factually sufficient; (2) Whether the conduct charged in Specification 2 of Charge II is constitutionally protected from prosecution; and (3) Whether the Government was preempted from charging violations of 18 U.S.C. § 2251 under Clause 3 of Article 134, UCMJ, because Congress limited prosecution of such conduct to Article 120b, UCMJ. We find no relief is warranted and affirm the findings and sentence.

## I. BACKGROUND

In the autumn of 2013, Appellant, a 19-year-old Airman assigned to the weather squadron at Davis-Monthan Air Force Base (AFB), Arizona, began corresponding by Facebook and text message with HB, then a 14-year-old girl living in Appellant's home state of New York. At the time, HB's Facebook page stated that she was 13 years old and in the seventh grade. Their conversations eventually turned to sexual topics. In the course of their electronic correspondence, Appellant sent HB a photo of his penis and a video of himself masturbating. In addition, Appellant requested HB send him sexually explicit pictures of herself in return, including pictures of herself masturbating. Appellant met with HB in person when he visited New York in December 2013. Over the course of one or two weeks, Appellant engaged in sexual intercourse with HB approximately five times.

In April or May of 2014, Appellant began corresponding with another girl, SK, after they were matched by a phone application known as "Hot or Not." This correspondence began either shortly before or soon after SK's 17th birthday in April 2014. SK's Hot or Not profile accurately listed her date of birth

---

[1] The military judge found Appellant not guilty of one specification of sexual abuse of a child in violation of Article 120b, UCMJ.

and the fact that she lived near Tucson, Arizona, where Appellant was stationed. Appellant and SK exchanged phone numbers and began texting and calling one another. In the course of their correspondence, SK informed Appellant of her actual age and that she was in high school. Eventually their conversations turned sexual. Appellant requested SK send him photos of herself naked, including her breasts and vagina. SK initially resisted but, according to her trial testimony, Appellant "would be really disappointed and continue to ask." Eventually, SK complied with Appellant's requests and sent him sexually explicit pictures by text message and via the Snapchat cell phone application.

In late July 2014, Appellant engaged in a text conversation with SER, another then-14-year-old girl who lived in New York. Appellant was aware SER was under the age of 16 years at the time. The conversation included several explicit descriptions by Appellant of sexual acts he wanted to perform with SER.

Appellant's internet activities came to the attention of the Air Force Office of Special Investigations (AFOSI) detachment at Davis-Monthan AFB. On 1 August 2014, Appellant provided written statements to AFOSI that included the following:

> I have been talking to girls under the age of 18 and sending/receiving texts of a sexual nature.
>
> . . .
>
> I have also been talking to a girl named [SK],[2] and she is a 17 year old senior in high school. Her [sic] and I have never had sex, but we do talk about it a bit. . . .
>
> . . .
>
> A girl I know back home in New York is named [SER],[3] and she is under 18. Her [sic] and I do exchange sexual texts and pictures quite a bit, but I have erased them off my phone because I don't want to keep them, as she is under 18. Her [sic] and I talk about meeting when I come back home, but that is some time away.
> . . .
>
> Another girl is named [HB] and she is under 18 as well. We used to hang out when I was in school about 5 years ago. We dated

---

[2] Appellant's statement uses SK's first name only, but in context it clearly refers to SK.

[3] Appellant's statement uses SER's first name only, but in context it clearly refers to SER.

> awhile ago and regularly talked about sex and shared pictures.
> . . .
>
> [SER] from New York sent me some naked pictures of her lying
> on her bed and also in her bathroom, and also pictures of her in
> a skimpy dress, and in return I sent her naked pictures as well
> of my penis and of me naked after a shower.

Appellant told the AFOSI agents he had previously deleted the pictures he received from the girls. The agents lawfully obtained Appellant's phone and sent it to the Defense Criminal Forensics Laboratory (DCFL). DCFL performed an extraction on Appellant's phone that failed to retrieve any sexually explicit images of SK, SER, or HB but did recover four "selfie" photographs of a hand holding a penis as well as the July 2014 text exchange between Appellant and SER described above.

On 3 October 2014, Appellant provided AFOSI an additional written statement that included the following:

> I used to date a girl named [HB], who was 15 when we were
> talking and dating, while I was 19. While I was home over
> Christmas last year, her [sic] and I hung out quite a bit, and her
> [sic] and I would end up having sex most of the time. It started
> with us talking about how we met when we were younger, then
> we started dating and began talking more explicitly, including
> having phone sex when I wasn't home. When we talked, we ex-
> changed multiple pictures and videos of each other in various
> sexual poses, as well as performing sexual acts for each other to
> see. . . . [S]he hates me now.

Appellant also referred to SER, who he described as 15 years old. He stated his correspondence with SER eventually became

> explicit with detail about having sex. It most [sic] started by us
> talking about kissing and rubbing each other's bodies. Then we
> would go into the details of how we would have sex, including
> oral and vaginal sex. I sent pictures to [SER] when [she] re-
> quested, and [she] sent me pictures in return, when I asked. . . .

Appellant went on to describe meeting SK through Hot or Not. He stated SK "told me she was 16. . . . Then we got closer and started talking about having vaginal and oral sex. We traded pictures and videos when we were talking, about sex and touching our bodies in a sexual manner."

At trial, the Government introduced the testimony of HB and SK, Appellant's written statements, images extracted from Appellant's phone, and the transcript of Appellant's July 2014 text conversation with SER as well as other

evidence. The Government did not introduce any sexually explicit photographs of HB, SK, or SER. On cross-examination, SK acknowledged that she had engaged in sexually-charged text exchanges with several other males in addition to Appellant and that, at one point during a pretrial interview with trial counsel, SK had initially misattributed to Appellant one particular text exchange that was actually with another individual.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

18 U.S.C. § 2251(a) provides, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such

person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce . . . .

18 U.S.C. § 2256 defines "minor," as that term is used in 18 U.S.C. § 2251(a), as anyone under the age of 18 years.

In *United States v. Roderick*, 62 M.J. 425, 429–30 (C.A.A.F. 2006), the Court of Appeals for the Armed Forces (CAAF) explained the term "sexually explicit conduct" as utilized in 18 U.S.C. § 2251(a) and defined by 18 U.S.C. § 2256 includes sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or "lascivious exhibition of the genitals or pubic area of any person." To determine what constitutes a "lascivious exhibition," the CAAF adopted the six factors developed in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), and widely employed across the federal circuits. These factors include:

> (1) Whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) Whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity;
>
> (3) Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) Whether the child is fully or partially clothed, or nude;
>
> (5) Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
>
> (6) Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Roderick*, 62 M.J. at 429 (citing *Dost*, 636 F. Supp. at 832). However, these factors are not exclusive and the CAAF "combin[es] a review of the *Dost* factors with an overall consideration of the totality of the circumstances." *Id.* at 430.

**2. Analysis**

Appellant essentially makes two arguments in support of his contention that his conviction of Specification 2 of Charge II, alleging that he enticed SK to engage in sexually explicit conduct in violation of 18 U.S.C. § 2251, is legally and factually insufficient. First, he contends that because the Government did not present the pictures of SK that Appellant and SK referred to, it is impossible to apply the *Dost* factors to those images and determine that they consti-

tuted a "lascivious exhibition" of the genitals or pubic area and were thus "sexually explicit" within the meaning of 18 U.S.C. § 2251. Second, he asserts the imprecise descriptions in Appellant's statements and SK's testimony of the images of SK, combined with the absence of the actual images, SK's admission that she texted with other men, and her previous misattribution of one particular text exchange to Appellant, raise substantial doubts as to his guilt. We disagree.

With respect to the *Dost* factors, the essential question is not whether the Government is able to introduce the sexually explicit images SK created and transmitted at Appellant's request; rather, the question is whether the evidence that was introduced establishes each element of the offense beyond a reasonable doubt. We find that it does. SK testified that she recalled meeting Appellant through the Hot or Not application. Appellant was aware of her age both from the application and because SK told him. Appellant eventually turned their conversations to sexual matters. Appellant requested SK send him a picture of herself with "all of [her] clothes off." Specifically, she testified he "mostly" wanted pictures of her vagina. When SK expressed reluctance, Appellant "would be really disappointed and continue to ask." She "absolutely" felt pressured, and eventually she complied. Appellant's sworn statement substantially reinforced SK's testimony. It confirmed that he knew SK was under 18 years of age, that they talked "about having vaginal and oral sex," and that they traded pictures and videos of themselves touching their bodies "in a sexual manner."

Thus the evidence shows SK sent Appellant, at his request, one or more[4] images of her naked vagina in the context of conversations about "having vaginal and oral sex" with one another. Considering all of the *Dost* factors and "the totality of the circumstances," we are convinced the images constituted a lascivious exhibition of SK's genitals and pubic area and were therefore "sexually explicit," such that Appellant engaged in sexually explicit conduct when he enticed SK to create and transmit by use of a means or facility of interstate commerce the photos of herself. *See Roderick,* 62 M.J. at 430.

Turning to Appellant's second argument, we are not persuaded that SK may have confused Appellant with one or more other men when she testified at trial. SK registered her interest in Appellant after viewing his photo and other information on the Hot or Not application. She recalled there was a picture of him in his Air Force uniform, and, once they started corresponding, he told her he was "a weatherman for the Air Force," which made her "trust him

---

[4] SK's testimony and Appellant's statement imply she created more than one such image, but a single image would be sufficient to find Appellant guilty of the charge and specification.

more." Although she corresponded with a number of other men, to SK's knowledge Appellant was the only servicemember she texted with. Appellant sent SK additional photographs of himself. Notwithstanding her acknowledged prior confusion regarding one particular text exchange, SK identified Appellant by sight in the courtroom and affirmed she was "absolutely" sure she had the exchanges she testified to with Appellant.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," we conclude the evidence was legally sufficient to support Appellant's conviction of enticing SK to engage in sexually explicit conduct beyond a reasonable doubt. *Barner*, 56 M.J. at 134. Moreover, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of Specification 2 of Charge II is therefore both legally and factually sufficient.

## B. Constitutionally Protected Conduct

### 1. Law

We review for plain error a claim raised for the first time on appeal that a statute is unconstitutional as applied to an appellant's case. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Under this standard, to demonstrate that a facially constitutional statute is unconstitutional as applied to him, the appellant "must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress' and the President's determinations that his conduct be proscribed." *Id.*

In *Lawrence v. Texas*, the United States Supreme Court held a constitutional liberty interest protects the right of competent adults to engage in private, consensual sexual activity. 539 U.S. 558, 578 (2003). "Constitutional rights identified by the Supreme Court generally apply to members of the military unless by text or scope they are plainly inapplicable." *United States v. Marcum*, 60 M.J. 198, 206 (C.A.A.F. 2004). Whether the liberty interest identified in *Lawrence* renders a servicemember's conviction unconstitutional in a particular case involves a three-part inquiry:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? 539 U.S. at 578. Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Id.* at 206–07.

**2. Analysis**

Although not raised at trial, Appellant now contends the application of the three-part inquiry the CAAF articulated in *Marcum* demonstrates his conviction for enticing SK in violation of 18 U.S.C. § 2251 is unconstitutional because: (1) SK had a constitutionally-protected right to engage in private sexual behavior; (2) the justification for proscribing child pornography does not apply in this case because SK, though under 18, was at least 16 years old and consented to the activity; and (3) the Government did not allege or prove any military-specific considerations. *See id.* We disagree.

This court has previously rejected what Appellant essentially argues here: that because Congress has defined "child" for purposes of Article 120b, UCMJ, to mean someone under the age of 16 years, his enticement of a 16- or 17-year-old girl to create sexually explicit photos of herself was constitutionally protected. *See United States v. Hill*, No. ACM 38848, 2016 CCA LEXIS 291, at *11–13 (A.F. Ct. Crim. App. 9 May 2016) (unpub. op.). In *Hill* we noted that although a 16- or 17-year-old girl does not meet the definition of "child" under Article 120b, "that does not necessarily make her an adult as that word is used in *Lawrence*." *Id.* at *11. *Lawrence* specifically limited its holding to sexual activity between adults, *see* 539 U.S. at 578, and SK was not an adult for purposes of 18 U.S.C. § 2251. "[E]nticing a minor, even one who has reached the age of consent [under Article 120b, UCMJ], to engage in lewd conduct for the purpose of producing a visual depiction of such conduct does not fall within the sphere of constitutionally protected conduct under *Lawrence*." *Hill*, 2016 CCA LEXIS at *12–13; *see New York v. Ferber*, 458 U.S. 747, 766 n.18 (1982) ("[C]hild pornography [as defined by New York statute] is unprotected speech subject to content-based regulation."). Although the appellant in *Hill* was not charged with violating a federal child pornography statute in violation of Clause 3 of Article 134, UCMJ, the constitutional analysis is the same, and we reach a similar conclusion in Appellant's case. *See id.* at *12 (citing with approval analysis of prosecution under 18 U.S.C. § 2251 in *United States v. Bach*, 400 F.3d 622, 629 (8th Cir. 2005)).

We find unpersuasive Appellant's reliance on *Carey v. Population Servs. Int'l*, 431 U.S. 678, 694 (1977). Appellant cites *Carey* for the proposition that "the right to privacy in connection with decisions affecting procreation extends to minors as well as to adults." *Id.* at 693. However, Appellant cites a portion of the opinion that was not joined by a majority of the Court. Moreover, even those justices who did join that portion "proceed[ed] on the assumption that the Constitution does not bar state regulation of the sexual behavior of minors." *Id.* at 694 n.17. In any event, we are not persuaded that *SK's* right to

9

privacy with regard to decisions affecting procreation gives *Appellant* a constitutionally-protected right to entice 16- or 17-year-old minors to create images of themselves engaging in sexually explicit conduct.

Appellant may find it incongruous that federal law permits a servicemember to engage in sexual intercourse with a 16- or 17-year-old but prohibits a servicemember to persuade, induce, or entice that same individual to create a sexually explicit photograph of herself for private viewing. However, that is what Congress has done, and the Constitution does not prohibit it from doing so.

## C. Preemption

### 1. Law

We review de novo questions of statutory interpretation, including preemption. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015); *United States v. Benitez*, 65 M.J. 827, 828 (A.F. Ct. Crim. App. 2007). However, if an appellant forfeits an issue by not raising it at trial, appellate courts review it for plain error. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). To prevail under a plain error analysis, the appellant must demonstrate that there was error, the error was plain or obvious, and the error materially prejudiced a substantial right. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011).

The preemption doctrine "prohibits application of Article 134 to conduct covered by Articles 80 through 132." *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), pt. IV, ¶ 60.c.(5)(a). In *United States v. Kick*, 7 M.J. 82 (C.M.A. 1979), our superior court referred to the preemption doctrine as the

> legal concept that where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element. However, simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way.

*Id*. at 85 (citations omitted); *see United States v. Erickson*, 61 M.J. 230, 233 (C.A.A.F. 2005). Accordingly, the preemption doctrine only precludes prosecution under Article 134, UCMJ, where two elements are met: "(1) 'Congress intended to limit prosecution for . . . a particular area' of misconduct 'to offenses defined in specific articles of the Code,' and (2) 'the offense charged is composed of a residuum of elements of a specific offense.'" *United States v. Curry*, 35 M.J.

359, 360–61 (C.M.A. 1992) (omission in original) (quoting *United States v. McGuinness*, 35 M.J. 149, 151–52 (C.M.A. 1992)).

Article 120b(c) provides: "Any person subject to this chapter who commits a lewd act upon a child is guilty of sexual abuse of a child and shall be punished as a court-martial may direct." For purposes of this article, Article 120b(h)(4) defines "child" to mean "any person who has not attained the age of 16 years." Article 120b(h)(5) defines a "lewd act" to include, *inter alia*, "intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person[.]" 10 U.S.C. § 920b(h)(5)(C).

### 2. Analysis

Although Appellant did not raise the issue at trial, he now contends the Government was preempted from prosecuting him under Article 134, UCMJ, for enticing HB and SK to participate in sexually explicit conduct for the purpose of creating a photo of that conduct in violation of 18 U.S.C. § 2251, because Congress intended Article 120b(c) to apply to such alleged misconduct. We disagree.

We have recently considered and rejected similar arguments. In *Hill*, we held that a specification alleging the enticement of a minor to engage in lewd acts for the purpose of producing a visual depiction thereof in violation of the second clause of Article 134 was not a residuum of the elements of sexual abuse of a child under Article 120b, UCMJ. 2016 CCA LEXIS 291, at *5. Significantly, although *Hill* involved service-discrediting conduct in violation of Clause 2 of Article 134, rather than the commission of a "crime[ ] or offense[ ] not capital" in violation of Clause 3, we cited federal child pornography statutes including 18 U.S.C. § 2251 for the proposition that enticing a child to engage in illegal conduct is an offense distinct from the underlying sexual offense. Similarly, in *United States v. Wheeler*, consistent with the CAAF's holding in *United States v. Schell*, 72 M.J. 339, 343–44 (C.A.A.F. 2013), we found the Article 134 Clause 3 offense the appellant was charged with, alleging enticement of a minor in violation of 18 U.S.C. § 2422, was "not composed of a residuum of elements of any of the other enumerated UCMJ offenses." 76 M.J. 564, 572 (A.F. Ct. Crim. App. 2017), *pet. granted* 76 M.J. 457 (C.A.A.F. 2017); *see also United States v. Chambers*, No. ACM 38975, 2017 CCA LEXIS 318, at *7 (A.F. Ct. Crim. App. 4 May 2017) (unpub. op.) (Article 134 Clause 2 specification alleging wrongful inducement of a minor to create sexually-explicit visual depiction was not preempted by Article 120b).

The implications of these decisions for Appellant's argument is clear. Although Appellant contends *Wheeler* is not dispositive because it addressed a

violation of 18 U.S.C. § 2422 rather than 18 U.S.C. § 2251 as he was charged with, he concedes both contain the element of enticement, and he fails to meaningfully distinguish the statutes for purposes of our preemption analysis. We continue to adhere to our previous reasoning. We find the military judge did not commit plain error by failing to rule *sua sponte* that the violations of Article 134 alleged in Specifications 1 and 2 of Charge II were preempted by Article 120b, UCMJ.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[5] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court

---

[5] We note an error in the promulgating order with respect to Specification 1 of Charge I, where the order reads ". . . had no attained the age . . ." vice ". . . had not attained the age . . ." as stated on the charge sheet. We direct the publication of a corrected court-martial order to remedy this error.