# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39247**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ryne M. SEETO**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 October 2018[1]

————————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Dismissal and confinement for 10 months. Sentence adjudged 24 July 2016 by GCM convened at Robins Air Force Base, Georgia.

*For Appellant:* Michael J. Millios, Esquire (argued); Major Jarett F. Merk, USAF.

*For Appellee:* Captain Peter F. Kellett, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Major Tyler B. Musselman, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

[1] We heard oral argument in this case in a closed session on 6 September 2018.

DENNIS, Judge:

Appellant was charged with one specification of attempted rape, one specification of aggravated sexual contact, one specification of assault consummated by a battery, one specification of conduct unbecoming an officer and gentleman, and one specification of indecent conduct in violation of Articles 80, 120, 128, 133 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920, 928, 933, 934. Appellant pleaded guilty, by exceptions and substitutions, to the specification of indecent conduct, but a panel of officer members convicted him of indecent conduct as charged. The panel also convicted Appellant of the specification of aggravated sexual contact and acquitted him of the remaining offenses. Appellant was sentenced to a dismissal and ten months confinement. The convening authority approved the sentence as adjudged.

Through counsel, Appellant raises six issues on appeal: (1) whether Appellant's transcript is non-verbatim when the Government lost an entire day of transcript and the military judge refused to authenticate the record as verbatim; (2) whether the specification alleging indecent conduct fails to state an offense when the President preempted the Government from creating novel charges under Article 134, UCMJ, for acts covered by Articles 80 through 132, 10 U.S.C. §§ 880–932, UCMJ; (3) whether the staff judge advocate (SJA) committed unlawful command influence when she ordered the military judge to her office, during trial, ex parte; (4) whether Appellant's rights to present a complete defense and meaningful cross-examination were violated when the military judge excluded evidence of BV's motive to fabricate offered pursuant to Mil. R. Evid. 412; (5) whether the specification alleging indecent conduct was an unreasonable multiplication of charges with the specification alleging aggravated sexual contact and should have been dismissed pretrial; and (6) whether the Government committed a due process violation when it took 277 days to take action on the case despite knowing that Appellant was serving confinement that could not be approved because there was a non-verbatim transcript.[2]

---

[2] Appellant also raises ten issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) the charges were improperly referred to trial; (2) the military judge erred when he denied Appellant's motion to sever; (3) the military judge erred in admitting excited utterance testimony; (4) the military judge abused his discretion in not suppressing Appellant's statements to police; (5) the SJA erroneously advised the convening authority regarding panel selection; (6) the military judge abused his discretion in denying one of Appellant's challenges for cause to a panel member; (7) trial counsel's argument was improper; (8) the indecent conduct specification is legally

*(Footnote continues on next page)*

We find that Appellant's transcript is non-verbatim, set aside the offenses for which he was found guilty, and authorize a rehearing. Given our resolution of this issue, we need only address two additional issues: whether the specification alleging indecent conduct fails to state an offense, and whether the Government violated Appellant's due process rights.[3] We disagree with Appellant's assertion that the Government was preempted from charging indecent conduct under Article 134, UCMJ, but find that the Government violated Appellant's due process rights when it took 277 days to take action on Appellant's case.

## I. BACKGROUND

This is the third time this case has appeared before us for review.

We first reviewed the case to consider whether Appellant was entitled to a writ of mandamus ordering the convening authority to defer Appellant's confinement until a determination could be made as to whether his record of trial was substantially verbatim in accordance with Article 54, UCMJ, 10 U.S.C. § 854. *Seeto v. Levy*, Misc. Dkt. No. 2016–15, 2017 CCA LEXIS 136 (A.F. Ct. Crim. App. 22 Feb. 2017) (unpub. op.) (*Seeto I*). There, we held that the convening authority's failure to identify any reasons for denying Appellant's deferment request constituted error. We vacated the convening authority's denial of Appellant's deferment request and issued a writ of mandamus ordering the convening authority to comply with the requirements of Rule for Courts-Martial (R.C.M.) 1101(c)(3).

When the convening authority complied, we again examined the case, this time to resolve Appellant's petition for a writ of habeas corpus. *Seeto v. Levy*, Misc. Dkt. No. 2016–15 (f rev), 2017 CCA LEXIS 201 (A.F. Ct. Crim. App. 21 Mar. 2017) (unpub. op.) (*Seeto II*). We declined to grant Appellant's petition noting that "the assessment of a petitioner's writ is not whether the petitioner has presented a meritorious case as to why he should be released, but rather whether his confinement is illegal." *Id*. at *4–5 (citation omitted). We

---

and factually insufficient; (9) the legal office engaged in prosecutorial misconduct by forcing Appellant to register as a sex offender; and (10) the legal office engaged in prosecutorial misconduct by violating Appellant's patient-psychotherapist confidentiality.

[3] We have considered the 13 remaining issues raised by Appellant and find they are either mooted by the findings adjudged at trial or warrant no further discussion or relief in light of our resolution of the issue regarding Appellant's non-verbatim transcript. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

further noted that, at the time, the convening authority "retain[ed] the option of directing a rehearing with regard to [Appellant's] offenses, including the offense to which he pleaded guilty, subjecting [Appellant] to a term of confinement equal to that adjudged at his initial trial . . . ." *Id.* at *7.

We now review the case on direct appeal.

## II. DISCUSSION

### A. Non-Verbatim Transcript

At the core of this case is the missing audio-recording of an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session from Appellant's trial. Appellant asserts that the missing session renders the record non-verbatim contrary to the requirements of Article 54, UCMJ, and that the absence of a verbatim record has resulted in material prejudice. We agree.

#### 1. Additional Facts

The facts surrounding this issue take place over a period of approximately nine months, but are best conveyed in three phases: (a) Appellant's 8 March 2016 motions hearing; (b) the discovery and attempted recovery of the missing audio recording; and (c) the reconstruction efforts.

##### *a. Appellant's 8 March 2016 Motions Hearing*

The military judge held an Article 39(a), UCMJ, session on 8 March 2016 during which ten motions and their respective responses were marked and introduced, most notably including a Defense Notice and Motion to Admit Evidence under Mil. R. Evid. 412, and a Motion to Compel Discovery of Mil. R. Evid. 513 Evidence.[4] BV, the victim in the case, testified during the hearing along with two other witnesses, BV's ex-boyfriend, Senior Airman (SrA) JD, and the Government's expert in forensic psychology, Dr. GD. Due to the sensitive nature of the testimony, the hearing was closed in accordance with

---

[4] The 8 March 2016 motions hearing addressed the following motions: (1) Defense Motion for Appropriate Relief to Compel Discovery; (2) Defense Notice and Motion to Admit Mil. R. Evid. 412 Evidence and Addendum; (3) Government Motion in Limine regarding Appellant's Misdemeanor Arrest; (4) Defense Motion to Sever the Specification of the Additional Charge; (5) Defense Motion to Dismiss for Improper Referral of Charges; (6) Defense Motion for Appropriate Relief to Preclude Mil. R. Evid. 404(b) Evidence; (7) Defense Motion to Dismiss for Failure to State an Offense; (8) Defense Motion to Dismiss for Failure to State an Offense—Preemption; (9) Defense Motion to Dismiss for Unreasonable Multiplication of Charges; and (10) Government Motion to Pre-Admit Evidence.

R.C.M. 806(b)(5). Experts for both sides remained in the courtroom during the hearing. One of the Government's experts, Dr. MC, took type-written notes and later provided them to trial counsel. The testimony covered a wide array of topics regarding BV's prior relationships and mental health and included detailed accounts of specific instances.[5] The hearing lasted approximately five hours.

The military judge did not make any rulings during the hearing.

### b. Discovery and Attempted Recovery of Missing Audio

Shortly before trial concluded on 24 July 2016, the court reporter, AO, discovered that the recording from the 8 March 2016 session was missing. When she attempted to recover the audio from her backup recorder, she discovered that the session had been recorded over with another proceeding. After AO's efforts to personally locate the missing recordings proved unsuccessful, she informed her SJA, the military judge, and the parties that she had lost the audio recording of the 8 March 2016 session. Following guidance from her SJA and the military judge, AO contacted personnel at the Air Force Military Justice Division (JAJM), who instructed her to substitute the missing portion of the record with a copy of the court reporter log notes.

On 12 October 2016, AO sent a copy of the transcript to the parties for authentication. The transcript included the following reference to the missing audio:

> THE MOTION HEARING WAS BEGUN ON 8 MARCH 2016. THE LOG NOTES FOR THE HEARING ARE ATTACHED TO THE RECORD OF TRIAL FOLLOWING THIS PAGE AND ARE NUMBERED AS PAGES 147.1 – 147.6.

> THE RECORDING OF THAT MOTION HEARING WAS LOST. ALL PARTIES TO THE TRIAL, INCLUDING THE MILITARY JUDGE, WERE NOTIFIED OF THE LOST RECORDING DURING THE TRIAL. NO RULINGS WERE MADE DURING THIS HEARING AND ALL EXHIBITS ADMITTED DURING THE HEARING ARE ATTACHED TO THE RECORD OF TRIAL.

---

[5] Any discussion of sealed material in this opinion is limited to that which is necessary for the analysis. *See* R.C.M. 1103A(b)(4).

THE MOTION HEARING THEN BEGAN AGAIN ON 10 MARCH 2015 [sic]. THERE WAS NO HEARING HELD ON 9 MARCH 2016.

On or about 24 October 2016, the legal office sent AO's computer to Global CompuSearch, a digital forensics firm, in an attempt to recover the missing audio files. On 7 November 2016, Global CompuSearch indicated that they were unable to locate the missing files.

### c. Reconstruction Hearing

When the audio files could not be recovered, the Government requested an Article 39(a), UCMJ, session to attempt to reconstruct the missing portions of the transcript. The military judge granted the Government's request and held a hearing on 21 November 2016. Three witnesses testified during the hearing: AO, SrA JD, and Dr. GD. AO testified regarding her discovery of the missing audio files, her subsequent efforts to recover them, and her preparation of the record of trial. SrA JD and Dr. GD recounted their testimony in response to questions from trial counsel. Both testified that their testimony was generally the same as their original testimony, but also noted that they could not be certain. The Government also introduced documentary evidence including a three-page affidavit from BV, the court reporter's log notes, and ten pages of the typed notes Dr. MC had previously provided to trial counsel. Notably, BV did not testify.

After hearing argument from both sides, the military judge made the following findings at the close of the post-trial Article 39(a), UCMJ, hearing:

> Some of the factors I've considered are that several hours of audio hearing are missing, eight and a half months have passed since 8 March, which are relevant when considering [SrA JD]'s testimony and Dr. [GD]'s testimony here today. Part of the missing records include the complainant's M.R.E. 412 testimony. The court notes that it denied part or some of the relief requested in the defense's 412 motion at trial. And in an effort to reconstruct the complainant's testimony, the government offered a sworn affidavit. I found [the government expert]'s notes to be helpful as well as [AO]'s testimony and log notes and the fact that the rulings that the testimony was based on will be included in the record of trial.
>
> The court also notes that it denied part of a request in the defense's 513 motion and again that was part of what [SrA JD] and Dr. [GD] testified to. As such, the court -- I believe that these omissions renders the transcript non-verbatim under

6

> R.C.M. 1103[(b)](2)(B) and I will be authenticating the record as such.

On 13 December 2016, the military judge issued a written ruling in which he found that the omission was substantial and that the transcript was non-verbatim. He authenticated the record accordingly the same day.

**2. Law**

A complete record of proceedings, including all exhibits and a verbatim transcript, must be prepared for any general court-martial that results in a punitive discharge or more than six months confinement. Article 54(c)(1), UCMJ; R.C.M. 1103(b)(2). Whether a transcript is verbatim, and a trial record complete, are questions of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted). "The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived." *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000) (citation omitted).

"Verbatim" for the purposes of a court-martial transcript does not mean word for word, but that the transcript be substantially verbatim. *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 8 (C.M.A. 1982)). "[T]he threshold question is whether the omitted material was substantial, either qualitatively or quantitatively." *Id.* (quoting *Lashley*, 14 M.J. at 9) (internal quotation marks omitted). Omissions "are qualitatively substantial if the substance of the omitted material 'related directly to the sufficiency of the Government's case on the merits' and the 'testimony could not ordinarily have been recalled with any degree of fidelity.'" *Id.* "Omissions are quantitatively substantial unless 'the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness.'" *Id.* (alteration in original) (quoting *United States v. Nelson*, 13 C.M.R. 38, 43 (C.M.A. 1953)).

Each case is analyzed individually to decide whether an omission is substantial. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999). "A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (citing *United States v. McCullah*, 11 M.J. 234, 237 (C.M.A. 1981)) (additional citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.*

**3. Analysis**

Applying this jurisprudence to Appellant's case, we consider three questions. First, is the omission substantial? Second, if the omission is substan-

tial, has the Government rebutted the presumption of prejudice resulting therefrom? Third, if the Government did not rebut the presumption of prejudice, is Appellant entitled to relief? We address these questions in turn.

### a. Is the omission substantial?

We find that the missing portion of the transcript is both qualitatively and quantitatively substantial.

With regard to the *qualitative* analysis, the Government asserts that the omission was not substantial because the missing portions of the transcript pertain only to motions practice, and thus do not relate directly to the sufficiency of the Government's case on the merits. We disagree. The Government relies on the analysis in *Lashley* to support its assertion. In *Lashley*, the Court of Military Appeals found that the missing portions of testimony from a prosecution witness were a qualitatively substantial omission because they directly related to the sufficiency of the Government's evidence on the merits. *Lashley*, 14 M.J. at 9. But *Lashley* does not preclude a finding that an omission is qualitatively substantial on other grounds. We also reject the implication that motion rulings cannot directly relate to the sufficiency of the Government's evidence on the merits. Appellant was convicted of two offenses: conduct unbecoming and indecent conduct. Though Appellant pleaded guilty to conduct unbecoming, he did so only by exceptions and substitutions, and pleaded not guilty to touching BV's genitals and breasts with his hands. The Government elected to litigate the conduct unbecoming offense as charged, and as such, had the burden to prove Appellant's guilt to the offenses as charged. The Government offered a variety of evidence to prove Appellant's guilt, but BV's testimony was a critical part of the Government's case. Throughout the trial, Appellant made repeated attempts to attack BV's credibility using Mil. R. Evid. 412 and 513 evidence, some of which was excluded by the military judge based on testimony missing from the record of trial. The admission or exclusion of evidence affecting the credibility assessment of a key Government witness directly relates to the sufficiency of the Government's evidence on the merits. We therefore find the missing motions hearing constitutes a qualitatively substantial omission.

With regard to the *quantitative* analysis, our conclusion that the absence of an entire day of Appellant's trial is a substantial omission is hardly surprising. An entire day of Appellant's trial is missing from the record. But the Government asks us to turn our attention elsewhere, pointing to the fact that the missing portion of the transcript involved only motions; that the motions introduced during the hearing, along with the military judge's written rulings, are included as appellate exhibits in the record of trial; and that counsel recounted the testimony and argument presented on the motions when seeking reconsideration in later parts of the trial. The Government asserts that

the unique combination of circumstances in this case render the omitted material "so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness." *Nelson*, 13 C.M.R. at 43. We are not persuaded. Neither the presence of written pleadings nor references to testimony and argument renders the omitted material insubstantial. "[A] summary of the substance of the testimony and the '[i]nclusion of the substance of a portion of the record of proceedings dealing with material matter is not a verbatim transcript of the record.'" *Davenport*, 73 M.J. at 378 (second alteration in original) (quoting *United States v. Gray*, 7 M.J. 296, 298 (C.M.A. 1979)).

### b. Has the Government rebutted the presumption of prejudice?

Having found the omissions both quantitatively and qualitatively substantial, we evaluate whether the Government has rebutted the presumption of prejudice through its attempt to reconstruct the record. We find that it has not.

We, like the military judge, note that the duration of the missing hearing in conjunction with the length of time before reconstruction efforts commenced would make a successful reconstruction "an almost impossible task." *United States v. Boxdale*, 47 C.M.R. 351, 352 (C.M.A. 1973); *see Lashley*, 14 M.J. at 9 (finding that "the prompt and thorough remedial action taken, the assistance of the witness, and the availability of . . . [a] skeletal transcript" constituted unique circumstances to render the reconstructed record verbatim). Even the successful reconstruction efforts found in other cases upon which the Government relies consistently involved no more than 15 minutes of transcript. *See United States v. Watts*, 22 M.J. 909 (A.F.C.M.R. 1986) (substantially verbatim transcript where 11 minutes of witness testimony was promptly reconstructed); *United States v. Caudill*, 43 C.M.R. 924 (A.F.C.M.R. 1970) (substantially verbatim transcript where 15 minutes of witness testimony was reconstructed). In both cases, the reconstructed testimony was certified as accurate by both parties and the military judge. Here, more than five hours of transcript is missing from the record and the military judge found that the transcript was non-verbatim.

Still, the Government maintains that its efforts to reconstruct the record overcome the presumption of prejudice for three reasons: (1) the matters at issue during the 8 March 2016 hearing were mooted by the findings in Appellant's case; (2) the missing testimony was adequately reconstructed; and (3) the missing testimony did not affect the sufficiency of the evidence supporting the offenses for which Appellant was convicted.

We agree that some of the motions, such as Appellant's motion to sever the charge of assault consummated by a battery involving a different victim,

were mooted when Appellant was acquitted of that specification. Several others were not. Indeed, the most hotly contested motion—the Defense Motion to admit evidence under Mil. R. Evid. 412—remains an issue on appeal.

The Government's attempted reconstruction of the missing hearing, while laudable, was largely unsuccessful. Perhaps most glaringly, BV's testimony was "reconstructed" with a three-page affidavit, one page of which consisted only of the notary's signature block. In addition, there are a number of discrepancies between the reconstructed materials and what appeared to happen at the 8 March 2016 hearing. For instance, BV's affidavit references questioning by both parties and the military judge, yet it only details her responses to questions from trial defense counsel. A similar discrepancy was made apparent when trial defense counsel pointed out that SrA JD's reconstructed testimony lasted approximately 12 minutes despite his original testimony having lasted 26 minutes according to the court reporter's log notes. In yet another example, Dr. MC's notes include language that makes no sense in the context of the purported testimony as a whole.[6] Even with the benefit of the entire record, examples such as these leave us with more questions than answers. Did BV testify to any matter of significance in response to questions from trial counsel or the military judge? Why was SrA JD's reconstructed testimony less than half the length of the original? Do Dr. MC's notes reflect her own thoughts or is that what the witness testified? Most importantly, is there testimony missing that should have influenced the military judge's ruling? These questions can hardly lead us to conclude that the missing evidence is "so unimportant or so uninfluential when viewed in the light of the whole record that it approaches nothingness." *Nelson*, 3 C.M.A. at 43.

In its final argument, the Government asserts that the sworn testimony Appellant provided during his providence inquiry is sufficient evidence upon which to affirm his findings of guilt, notwithstanding any prejudice resulting from the missing portions of the record of trial. For reasons similar to those we outlined in finding the omitted material qualitatively substantial, we disagree. Appellant's plea, while part of the Government's case, was not the

---

[6] Below is an excerpt of Dr. MC's notes of SrA JD's testimony:

> That day was she saying she did not have any recollection at all or just of the conversation we had had.

> He is dimwitted and does not understand anything complex…

> She said her amnesia was that she did not know who the people in her phone were…

primary evidence offered to prove his guilt. Though we are permitted to use a plea of guilty to establish "facts and elements common to both the greater and lesser offense within the same specification," we are prohibited from using Appellant's plea to one specification "to supply proof of any of the essential elements of another specification." *United States v. Caszatt*, 29 C.M.R. 521, 523 (C.M.A. 1960) (internal quotation marks and citations omitted); *see also United States v. Grijalva*, 55 M.J. 223, 228 (C.A.A.F. 2001) (finding that the military judge erred, albeit harmless, when considering Appellant's statements made during a providence inquiry as proof of a contested element).

Rarely does a record of trial a military judge has identified as non-verbatim make its way to the appellate court for direct appeal under Article 66, UCMJ, 10 U.S.C. § 866. Though rare, it is not unprecedented. We addressed a strikingly similar issue in *United States v. Snethen*, 62 M.J. 579, 580 (A.F. Ct. Crim. App. 2005). In *Snethen*, nearly two months after the appellant's trial had adjourned, the parties discovered that approximately one hour of the hearing on a motion to suppress was missing due to an equipment malfunction. Like here, the missing recording included witness testimony and argument, but no rulings. The military judge attempted to reconstruct the record. He used the notes he had taken during the proceeding, materials provided by counsel, the court reporter's notes, and the part of the transcript recorded just before the equipment malfunctioned to develop questions and answers for the two law enforcement agents whose testimony was missing. In the end, the military judge in *Snethen*, like the military judge in this case, found that despite best efforts at reconstruction, "the hurdles were too great" to overcome. *Id.* at 581. This court agreed and held that "[t]he appellant was prejudiced by a record that could not become 'substantially verbatim' given the importance of the lost testimony and arguments, the lengthy duration of the unrecorded portion of the trial, and the length of time between the trial and reconstruction efforts." *Id.* We find the same analysis holds true in this case.

### c. Is Appellant entitled to relief?

In the absence of a substantially verbatim transcript, we are unable to affirm the findings in this case, and therefore set them aside.[7] R.C.M. 1103(f)

---

[7] Citing *United States v. Santoro*, 46 M.J. 344 (C.A.A.F. 1997), the Government asks this court to affirm Appellant's conviction for conduct unbecoming based solely upon his plea of guilty by exceptions and substitutions. The issue in *Santoro* involved missing exhibits, not missing portions of the transcript. We do not "apply the remedy for

*(Footnote continues on next page)*

provides two remedies available when a verbatim transcript cannot be prepared: a cap on the punishment to be adjudged,[8] or if supported by the record, a rehearing on the offenses for which Appellant was found guilty. Though these two options would ordinarily cure transcript-related errors, "[s]ometimes the omissions are so substantial that the only remedy is a new trial." *Lashley*, 14 M.J. at 9 (citing *Boxdale*, 47 C.M.R. 351) (additional citations omitted). The unique combination of circumstances in this case persuades us to find only one remedy appropriate—set aside the findings and sentence and authorize a rehearing.

As a threshold matter, we note that our decision to set aside the findings does not divest us of our jurisdiction to review the case under Article 66, UCMJ. "Once jurisdiction is acquired pursuant to Article 66, the Court of Military Review has a statutory duty to review the case to completion unless the accused has waived his right to appeal or withdrawn it." *Boudreaux v. United States Navy-Marine Court of Military Review*, 28 M.J. 181, 182 (C.M.A. 1989).

As previously discussed, Appellant was convicted of two specifications alleging sexual contact with BV. What we know from the portions of the record before us is that Appellant's theory of the case focused solely on BV's lack of credibility. The military judge's ruling to exclude certain evidence the Defense sought to admit under Mil. R. Evid. 412 was of such import to the Defense case that it sought reconsideration of the military judge's ruling on at least four separate occasions. On appeal, the parties continue their dispute over whether the military judge erred in his decision to exclude the evidence. Yet, we are precluded in our ability to review the military judge's decision because the transcript is incomplete. We are similarly hindered by the absence of counsel's argument on the eight other motions introduced on 8 March 2016. *See* Mil. R. Evid. 103(a). The imposition of a lesser sentence would not resolve the impact the missing motions hearing transcript has on Appellant's direct appeal. As in *Boxdale*, "[u]nder these circumstances, [Ap-

---

an incomplete record to a nonverbatim transcript. . . ." *Davenport*, 73 M.J. at 379; *see also* Article 66(c), UCMJ.

[8] R.C.M. 1103(f)(1) provides that if a verbatim transcript cannot be prepared, the convening authority may "[a]pprove only so much of the sentence that *could be adjudged by a special court-martial*, except that a bad-conduct discharge, confinement for more than six months . . . may not be approved." (Emphasis added). Citing R.C.M. 1003(c)(2)(A)(ii), Appellant asserts that because officers cannot be adjudged confinement at a special court-martial, Appellant could not be adjudged any confinement in the absence of a verbatim transcript. In light of our decision to set aside the findings and sentence, we need not decide the merits of Appellant's assertion.

pellant] is entitled to a rehearing at which a proper record may be prepared." 47 C.M.R. at 352.

## B. Preemption

Because we authorize a rehearing on the finding of guilt as to indecent conduct in violation of Article 134, UCMJ, in the interest of judicial economy, we next consider Appellant's assertion that the indecent conduct specification under Article 134, UCMJ, fails to state an offense. Just as he did at trial, Appellant asserts that the indecent conduct charge alleging that he ejaculated on BV's stomach without her consent was preempted by Articles 120 and 128, UCMJ. We disagree.

### 1. Law

We review claims of preemption de novo. *United States v. Jones*, 66 M.J. 704, 706 (A.F. Ct. Crim. App. 2008).

The preemption doctrine generally prohibits application of Article 134, UCMJ, to conduct covered by Articles 80 through 132, UCMJ. "[W]here Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element." *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979) (citation omitted).

Under the doctrine, prosecution is prohibited if the following two questions are answered in the affirmative: (1) whether Congress intended to limit prosecution to a particular area or field defined in specific articles of the code; and (2) whether the offense charged is composed of a residuum of elements of a specific offense. *United States v. McGuinness*, 35 M.J. 149, 151–52 (C.M.A. 1992) (citing *United States v. Wright*, 5 M.J. 106, 110–11 (C.M.A. 1978)). The application of the preemption doctrine is not triggered solely because the act charged under Article 134, UCMJ, contains a subset of the elements of an enumerated offense. *Jones*, 66 M.J. at 706–07; *United States v. Feldkamp*, No. ACM 38493, 2015 CCA LEXIS 172, at *25 (A.F. Ct. Crim. App. 1 May 2015) (unpub. op.).

### 2. Analysis

Appellant's assertion requires little discussion since our analysis in *Feldkamp* squarely applies to this case. The appellant in *Feldkamp* also alleged that an indecent conduct allegation was preempted by Articles 120 and 128, UCMJ. We disagreed:

> We find no error with the military judge's ruling that the preemption doctrine did not prohibit the government from charging the appellant's indecent conduct under Article 134,

> UCMJ. We need not even reach the issue of Congress's intent, because the Article 134, UCMJ, offense charged is not composed of a residuum of elements of a specific offense. The indecent conduct offense charged adds an element not required by any applicable Article 120, UCMJ, or Article 128, UCMJ, offense—that the appellant's conduct was indecent. . . . Therefore, this is not a situation where the government created and punished another offense by simply deleting a vital element.

*Feldkamp*, unpub. op. at *30–31; *Cf. United States v. Long*, Misc. Dkt. No. 2014–02, 2014 CCA LEXIS 386, at *11–13 (A.F. Ct. Crim. App. 2 Jul. 2014) (unpub. op.) (declining to conclude the terminal element requirement for Article 134, UCMJ, offenses effectively eliminates the preemption doctrine).

Appellant attempts to distinguish *Feldkamp* by pointing to the Government's decision to add the element of "without consent" to the indecent conduct specification. Appellant argues that, as charged, the specification alleges a "non-consensual sexual offense preempted by the President." Even if we accepted Appellant's assertion that Congress intended Article 120, UCMJ, to occupy the field of nonconsensual sexual offenses, Appellant has failed to establish that the indecent conduct specification is composed of a residuum of elements of a specified offense. As the military judge stated in his ruling on Defense's preemption motion, "[t]he Government charged the [accused] with an act under Article 134, UCMJ, that is not an offense under the enumerated articles, and in so doing, has placed upon itself the burden of proving additional elements not contained within any offense under Article 120, UCMJ."

We find no error with the military judge's ruling that the preemption doctrine did not prohibit the government from charging Appellant's indecent conduct under Article 134, UCMJ. The indecent conduct specification is not composed of a residuum of elements of any specific offense because it adds an element not required by any Article 120 or 128, UCMJ, offense—that Appellant's conduct was indecent. We see no basis upon which to conclude that the Government was seeking to circumvent an element of an enumerated offense. Should the Government choose to hold a rehearing to retry Appellant for indecent conduct, the preemption doctrine does not prohibit it from doing so.

**C. Post-Trial Processing Delay.**

It took 277 days from the day Appellant was sentenced for the convening authority to take action.

**1. Additional Facts**

As previously noted, Appellant's trial concluded on 24 July 2016. Many of the events taking place after Appellant's trial have already been discussed,

but some bear repeating and several others are important to our analysis of Appellant's due process claim.

On 23 August 2016, 30 days after Appellant's trial, the Defense submitted a formal demand for speedy post-trial processing.

On 19 October 2016, 87 days after Appellant's trial, Appellant requested deferment of confinement "while the Government figures out if it can construct a verbatim transcript."

On 24 October 2016, 92 days after Appellant's trial, the Government sent the court reporter's laptop to Global CompuSearch to attempt to recover the missing recording.

On 25 October 2016, 93 days after Appellant's trial, the Defense renewed its demand for speedy post-trial processing.

On 31 October 2016, 99 days after Appellant's trial, the convening authority denied Appellant's request for deferment of confinement. Though he did not include the reasons for his decision, he later informed Appellant, "I denied your original request for deferment of confinement . . . because I concluded that the community's interest in your continued confinement outweighed the interest of you and the community in deferral."

On 7 November 2016, 106 days after Appellant's trial, Global CompuSearch notified the legal office it was unable to recover the lost audio.

On 11 November 2016, 110 days after Appellant's trial, Appellant filed a complaint pursuant to Article 138, UCMJ, 10 U.S.C. § 938, in which he again requested release from confinement.

On 21 November 2016, 120 days after Appellant's trial, the military judge provided a ruling on the record that the omissions in the record were substantial and that he would authenticate the record as non-verbatim.

On 9 December 2016, 138 days after Appellant's trial, the convening authority deferred a decision on Appellant's Article 138, UCMJ, complaint "until the completion of further fact gathering."

On 13 December 2016, 142 days after Appellant's trial, the military judge authenticated the record as non-verbatim.

On 5 January 2017, 165 days after Appellant's trial, the convening authority again deferred his decision on Appellant's Article 138, UCMJ, complaint.

On 2 February 2017, 193 days after Appellant's trial, Appellant's grandfather passed away. Appellant, having been raised by his grandfather for nine years of his childhood, sought release from confinement to attend his grandfather's funeral. The convening authority did not grant Appellant's request.

On 10 February 2017, 201 days after Appellant's trial, the convening authority denied Appellant's request for relief under Article 138, UCMJ.

On 28 February 2017, 219 days after Appellant's trial, the convening authority's SJA completed his staff judge advocate recommendation noting that "it was primarily defense litigation over the lost audio from the 8 March 2016 hearing that extended the post-trial processing in this case." The SJA's advice to the convening authority disagreed with the military judge's finding that the record was non-verbatim and recommended the convening authority approve Appellant's sentence as adjudged.

On 16 March 2017, 235 days after Appellant's trial, Appellant was released from confinement after having served his full sentence to confinement.

On 27 April 2017, 277 days after Appellant's trial, the convening took action approving the adjudged sentence of ten months confinement and a dismissal.

**2. Law and Analysis**

Where the convening authority's action is not taken within 120 days of the end of trial, we apply the presumption of unreasonable post-trial delay established by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135 (citations omitted). In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533). We apply these factors in turn.

### a. Length of the delay

The 277 days it took the Government to complete the post-trial processing in Appellant's case was more than two times longer than the presumptively unreasonable period set forth in *Moreno*. This factor weighs in Appellant's favor.

### b. Reasons for the delay

In weighing the reasons for the delay, we look both to the "Government's responsibility for any delay, as well as any legitimate reasons for the delay." *Id.* As the CAAF noted in *Moreno*, "The processing in this segment is completely within the control of the Government . . . ." *Id.* (citation omitted).

The Government was made aware that the audio recording of an entire session of the trial was missing prior to adjournment. Yet, over the course of the first 80 days following Appellant's trial the Government made only minimal efforts to fulfill its responsibility under Article 54, UCMJ. The court reporter testified that she spent "at least a day" searching her computer for the missing audio. When her search yielded no results, she consulted with other Government representatives such as JAJM personnel and her SJA. According to her testimony, the Government apparently intended to resolve the issue by including a copy of her log notes and a statement in the record noting that the recording was missing. Indeed, it was not until a newly-appointed defense counsel questioned the adequacy of the record—81 days after Appellant's trial—that the Government initiated diligent efforts to ensure the record was substantially verbatim.

Our conclusion in this regard is based not upon speculation, but upon the Government's own accounts of its post-trial processing efforts. In a memorandum for record, trial counsel noted that the legal office contacted Global CompuSearch "[a]s a result of Defense's motion." Similarly, in an email to defense counsel on 25 October 2016, the wing chief of military justice stated, "Since you want the [G]overnment to make every effort to ensure we can secure the audio, does this also mean you are waiving the 120-day post-trial Moreno Date? If not, we will attempt to press with what we have." Appellant declined to waive his right to speedy post-trial processing. And finally, in advising the convening authority of the reasons for the delay in post-trial processing, the SJA noted, "While defense counsel's aggressive litigation on behalf of his client is laudable, [Appellant] should not reap a windfall as a result of the delays attributable to defense litigation." We are troubled by this analysis. Congress placed upon the Government the duty to prove Appellant's guilt; to construct a substantially verbatim record of the proceedings if the approved sentence exceeds six months confinement or includes a punitive discharge; and to uphold the right to due process Appellant is afforded under the Fifth Amendment of the Constitution.[9] Any outcome resulting from Appellant's efforts to ensure the Government performs its duties cannot be considered a windfall.[10]

---

[9] U.S. CONST. amend. V.

[10] The defense litigation to which the SJA referred included Appellant's petition for extraordinary relief resulting in *Seeto I* and *Seeto II*. We note that Appellant's petition for relief did not request a stay in the post-trial processing of his case, thus providing no reason for the Government to further delay action in Appellant's case.

The reasons for the delay cannot be attributed to Appellant. The record was authenticated 142 days after Appellant's trial and 135 days prior to the convening authority's action. This factor also weighs in Appellant's favor.

### c. Assertion of right to timely review

Appellant submitted a demand for speedy post-trial review on three separate occasions following the conclusion of his trial. Appellant maintained his desire for speedy post-trial processing even when the Government asked whether he wanted to waive it to allow them to properly construct the record of trial. This factor weighs heavily in Appellant's favor.

### d. Prejudice

*Moreno* sets forth three types of prejudice arising from post-trial processing delays: oppressive incarceration, particularized anxiety or concern, and impairment of Appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted).

Oppressive incarceration is "directly related to the success or failure of an appellant's substantive appeal. . . . [I]f an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration may have been oppressive." *Id.* at 139 (citation omitted). Despite multiple requests for deferment, Appellant served his entire term of confinement before action was taken in his case. He has prevailed on the very issue for which he sought relief 87 days after his sentence was announced. Under these circumstances, we find Appellant's incarceration oppressive.[11] Thus, Appellant has established prejudice under this sub-factor.

"[P]articularized anxiety or concern . . . is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. Appellant avers that the post-trial delay in his case caused anxiety and concern for two reasons. First, Appellant points to the particularized anxiety

---

[11] We recognize what could be considered an inconsistency between our finding here and this court's previous decision to deny Appellant's petitions for extraordinary relief. In doing so, we note first that the party seeking relief must meet three requirements to prevail in a petition for extraordinary relief: (1) that the right to relief is clear and indisputable; (2) that there are no other adequate means to attain the relief; and (3) that the writ is appropriate under the circumstances. *Seeto II*, unpub. op. at *4. We declined to find Appellant's confinement unlawful since, at the time we considered the case, action had not yet been taken. Had the convening authority taken action ordering a rehearing in accordance with R.C.M. 1103(f), Appellant could have lawfully been confined for "a term of confinement equal to that adjudged at his initial trial . . . ." *Seeto II*, unpub. op. at *7.

he suffered as a result of his grandfather's death. Appellant had been confined for 193 days when his grandfather passed away. Notably, the military judge had authenticated the record as non-verbatim, putting the Government on notice that Appellant's adjudged period of confinement could be in violation of R.C.M. 1103(f). Still, Appellant remained confined. Appellant also points to the anxiety he suffered as a result of having to register as a sex offender. The CAAF addressed a similar claim in *Moreno* in considering whether the appellant had been "living under the opprobrium of guilt when he . . . has not been properly proven guilty and may indeed be innocent under the law." *Id.* at 139 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 304 (5th Cir. 1980)). The CAAF found credence in the appellant's claim notwithstanding its acknowledgement that, "[h]ad [the appellant]'s conviction been affirmed prior to his release, registration as a sex offender would have been a proper consequence of his conviction." *Id.* Because we have set aside the conviction for which Appellant was required to register as a sex offender, we too recognize the particularized anxiety he has suffered as a result of the delay. Appellant has established prejudice under this sub-factor.

Conversely, Appellant has offered no evidence, and we find none, that his ability to present a defense at a rehearing has been impaired by the delay in this case. Appellant has failed to establish prejudice under this sub-factor.

Having found that Appellant suffered both oppressive incarceration and particularized anxiety and concern, we conclude that the fourth *Barker* factor, prejudice, also weighs in Appellant's favor.

### e. Remedy

As a final matter, we fashion an appropriate remedy for the violation of Appellant's due process rights. Relief for due process violations must be narrowly tailored to the circumstances of the case. *Id.* at 143 (citation omitted). The CAAF sets forth six remedies for courts to consider in determining what, if any, relief is appropriate to resolve a *Moreno* violation. These include: (1) day-for-day reduction in confinement or confinement credit; (2) reduction of forfeitures; (3) set aside of portions of an approved sentence including punitive discharges; (4) set aside of the entire sentence, leaving a sentence of no punishment; (5) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (6) dismissal of the charges and specifications with or without prejudice. *Id.*

Having set aside the findings and sentence and authorized a rehearing, we find that the appropriate remedy is to limit the sentence that may be approved by a convening authority following a rehearing of Appellant's case.

## III. CONCLUSION

We hereby **SET ASIDE** the findings of guilt and the sentence. A rehearing is authorized. In the event such a rehearing results in a finding of guilt, the convening authority may approve no sentence of confinement greater than 99 days. The record of trial is returned to the Judge Advocate General for remand to an appropriate convening authority for action consistent with this opinion. Article 66(d)-(e), UCMJ, 10 U.S.C. § 866(d)-(e).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court